D. R. DAVIDSON ET UX V. W. L. GELLING ET AL

No. A-4265. Decided January 13, 1954.
(263 S.W. 2d Series 940)

*Ruff  Wall* and *Fred  Whitaker,* both of  Carthage, for peti-
tioners.

The Court of Civil Appeals erred in holding that the title of the petitioners was put in issue in a former injunction suit between the parties. Miller v. Dallas County, 252 S.W. 2d 470; United States v. Swift & Co., 286 U.S. 106; Day v. Chambers, 62 Texas 192.

*William Craven,* of Marshall, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The questions presented here are narrow ones in a trespass to try title action over a straight strip of land, about 700 feet long and 25 feet wide, called the Lewisville Road and located within the Deupree Addition in the City of Marshall, the west line of the strip, which runs north and south, being also the west line of the addition. The plaintiffs, Davidson and wife, who are our petitioners, appear to have the fee ownership of the strip, subject to an easement for street purposes on the part of the defendant-respondents, Gelling and wife, but sued for both title and possession. In a trial without a jury, our petitioners suffered a take nothing judgment, which was affirmed by the Court of Civil Appeals (258 S.W. 2d 163), and it was this seeming and apparently unnecessary loss of their fee interest, which caused us to grant the writ of error.

The plat of the addition was filed by members of the Deupree family, as owners thereof, in 1937, with express dedication "to the use of the public" of "the streets and alleys as shown thereon," including the Lewisville Road. While the dedication made no reference to action to be taken by the City thereon, the City (evidently in 1937) endorsed on the plat that it "accepted" the streets save the Lewisville Road, which it expressly rejected for deficiency in width. In 1938 the Deuprees, as owners of the addition, sold Lot 12 (according to the plat) which abutted lengthwise upon the road, the defendant-respondents Gelling thereafter (1946) acquiring most of the same lot from the 1938 purchaser and in the same year conveying their interest to one Shaw. The plaintiff-petitioners Davidson in 1946 purchased from the Deuprees Lot 1 of the same block (No. 2) lying immediately south of Lot 12 abovementioned and like it abutting on the Lewisville Road from the east. Meanwhile, since 1941, the respondents Gelling were owners of premises in the Rosborough and Byrne Addition abutting on the road from the west (that is, across from the petitioners Davidson and from their own grantee, Shaw) and had built a home thereon. With the title to this homesite the Deuprees had evidently no connection. In this situa-

tion, the petitioners in 1947 procured a quitclaim deed to the road from the Deuprees and attempted to close it. This attempt was enjoined at the suit of Shaw (then owning Lot 12 abovementioned) and the Gellings, (owning the home across the road) the injunction being issued in 1948, and no appeal being taken therefrom. Thereafter (1949) the Davidsons acquired Shaw's Lot 12, this being the only change in the situation between the date of the injunction and the filing by the Davidsons of the instant suit for title and possession against the respondents Gelling and the City.

The City (never having "accepted" the road) disclaimed. The respondents pleaded their injunction as *res adjudicata* of all issues involved and also pleaded not guilty. They moreover filed, in response to a demand therefor, an abstract of their claim, consisting merely of (a) the abovementioned dedication of the Deupree Addition (b) the deed (1941) from Rosborough and Byrne, whereby the Gellings acquired their homesite on the west side of the Road, and (c) the pleadings and judgment in the injunction suit. The petitioners introduced evidence of record title from the sovereignty of the soil as well as limitation title (antedating 1937) while the evidence for the respondents largely followed their abstract. The brief decree of the court simply "finds in favor of the Defendants" and adjudges "that Plaintiffs take nothing by their suit." The judge, in his oral pronouncement at the close of the evidence, stated in effect that the injunction judgment had determined the Road to be a public or dedicated street and that accordingly he was "entering judgment for the defendants." However, the subsequently filed findings and conclusions contain also statements to the effect that (a) the plaintiffs had failed to prove "record title" or "limitation title" "to the property in controversy"; (b) they could prevail only on the strength of their own title; (c) they had, as defendants in the injunction suit, "put in issue the title to the land in controversy" as they "not only had the right, but it was proper" for them to do "in that suit, as a defense"; and (d) "the judgment in that cause was *res adjudicata* to any right or title" they "might now claim in said land."

■ While from the abbreviated record we cannot say for certain that in the instant suit the petitioners did prove a good title to the fee interest from the sovereignty, it is obvious from the abstract of the respondents and from the evidence that, in effect, the Deuprees, as original owners (or claimants) and dedicators of the Deupree Addition, are the common source of the conflicting claims of the parties. Abstracts may thus establish a case of

common source. See Gonzales v. Batts, 20 Texas Civ. App. 421, 50 S.W. 403, and the Commission of Appeals decision in Mortimer v. Jackson, 206 S.W. 510, which cites the Gonzales case as authority. The fact that the petitioners gratuitously assumed the burden of going back to the sovereignty and may have failed to carry it is no good reason to deprive them of the benefits of the common source rule. It is equally clear that, omitting the matter of *res adjudicata* hereinbelow discussed, the only claim of right on the part of the respondents Gelling is one of easement and not fee ownership. The dedication by the Deuprees obviously could give no fee title to respondents as abutting owners of property in a different addition with which the Deuprees had no connection. And if the respondents acquired any fee interest in the Road by their 1946 purchase of part of Lot 12 of the Deupree Addition (which they promptly sold to Shaw, who sold in 1949 to the petitioners, as before stated) their abstract fails to suggest any claim to this effect, unless it be included in the claim of *res adjudicata*. Aside from the latter, the petitioners evidently acquired the fee title (to practically all of the Road) either by their 1949 purchase of the bulk of Lot 12 and their 1946 purchase from the Deuprees of Lot 1 or by their 1947 quitclaim deed to the Road from the Deuprees. If the normal effect of the "take nothing" decree, with or without aid of the finding that the petitioners had failed to prove any title, would be to divest petitioners of their fee interest, despite the oral rendition of judgment prescinding altogether from the matter of fee ownership, nevertheless the abstract and evidence would require us to hold that such effect does not obtain unless as a result of the injunction. See Neilon v. Texas Trust & Security Co., Texas Civ App., per McClendon, C. J., 147 S.W. 2d 321, 325, wr. of er. dism. judgment cor., (136 Texas 423).

2  Nor does loss of the fee ownership follow from the injunction. Of course, the petitioners are wrong in their reasoning that an injunction cannot ever determine title merely because subsequent developments may make it inapplicable (for example, should the respondents here have later contracted that the petitioners might close the Road). Stephenson v. Miller-Link Lumber Co., Texas Com. App., 277 S.W. 1039; Muhle v. New York, T. & M. Ry. Co., 86 Texas, 459, 25 S.W. 607; Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S.W. 2d 1106; Southwestern Settlement & Development Co. v. May, Tex. Civ. App. 220 S.W. 133, (reversed in part on other grounds in 235 S.W. 529). See also the Court of Civil Appeals decision in City of Gilmer v. Mayer, 181 S.W. 2d 1020. Even a trespass to try title judgment determines matters only as of its date, so that a sub-

sequent conveyance by the successful party to the unsuccessful one would obviously place title in the latter and in that sense avoid the judgment. See citations in 26 Texas Jur., p. 62, note 19. But this is not to say that in the instant situation the injunction determined more than that the strip of land in question was subject to an easement or right of user of the respondents. The latter is all it did determine.

■ The injunction judgment (rendered after a trial to the court) purports to reflect the findings and conclusions on which the relief was based. It contains no general language which might include issues not specifically mentioned, and by its specific reference to the dedication and its corresponding conclusion that the road was a public street, inferentially excludes a decision with regard to fee ownership. See Neilon v. Texas Trust & Security Co., supra. The pleadings of the respondents, as plaintiffs, base the claim to relief exclusively upon the grounds on which the court granted it, thus forebearing to claim the fee interest and to exclude ownership of such interest in the petitioners as defendants. Had the pleadings of the latter been a mere denial, no one would say that the issue of fee ownership was involved. It would have been irrelevant, because the plaintiffs could procure their injunction on the basis of a mere easement (as they sought to do) even though the subordinate fee ownership might be in the defendants but, on the other hand, could not obtain relief on the bare ground that the defendants did not own the fee interest. Nor can we agree with the trial court in the instant case that, in the injunction suit, the actual answer of the defendants (which, incidentally, sought no affirmative relief) put the matter of fee interest in issue by the statement that the defendants owned such interest by virtue of their aforementioned quitclaim from the Deuprees. One cannot thus make an issue of something irrelevant to a disposition of the case. Proof of ownership of the fee interest by the defendants without more would not defeat the plaintiffs' claim of easement arising from the dedication, nor would failure of the defendants to make such proof entail a judgment for the plaintiffs in the absence of the dedication. Whether we regard the point of res adjudicata as one "in bar" of the instant suit or (what is doubtless more correct) as a matter of "estoppel by judgment" with regard to a single issue (see 26 Texas Jur., p. 179 et seq.) the question of fee ownership was not foreclosed by the injunction. In Campbell v. Schock, Texas Com. App., 50 S.W. 2d 788, a take nothing judgment against a defendant who by cross action sought the full title was held not to be res adjudicata that he had no title at all, where the successful plaintiff in that suit had claimed only a mineral leasehold inter-

est. A similar result follows *a fortiori* where purely defensive pleadings of the defendant include a statement of fee ownership not material to a disposition of the case.

■ What actual disposition of the instant suit should follow from our views above expressed is somewhat doubtful. It would perhaps be proper to say that, under the circumstances, the judgment of the trial court, being correct in so far as it operates to defeat the claim of the petitioners for exclusive possession of the road and to vindicate the right of the respondents to equal use of it as a street, is not to be interpreted as having any additional effect and accordingly is to be affirmed along with the judgment of the Court of Civil Appeals. As a practical matter, however, it is doubtless preferable to reform the judgment of the trial court so as to award the petitioners recovery of the fee ownership of the strip in suit subject to an affirmative award to the respondents of their abovementioned rights to the use of the strip as a public street. The judgment of the Court of Civil Appeals is accordingly reversed and that of the trial court reformed as indicated and, as reformed, affirmed. The costs are divided equally between the petitioners and respondents.

Opinion delivered January 13, 1954.