O. S. OVERTON, Appellant, v. R. C. OVERTON ET AL.—37 S. W. (2d) 565.

Division One, March 31, 1931.

*D. S. Mayhew* and *W. J. Owen* for appellant.

*J. S. Davis* and *G. M. Landis* for respondents.

RAGLAND, J.—This is a suit in equity to cancel and set aside in part, on the ground of mistake, the judgment in a certain action for the partition of real estate. From a judgment of the circuit court dismissing his bill plaintiff prosecutes this appeal. There is but little controversy as to the facts. They will be stated as briefly as may be.

On March 4, 1916, A. A. Overton, the father of appellant, owned the following described land in Barry County, Missouri, to-wit: The northeast quarter of the northwest fractional quarter and the north half of the northeast fractional quarter in section one, township twenty-three, range twenty-nine. In one corner of the land just described there was a tract of twelve acres cut off from the remainder by a creek which occasionally overflowed and flooded the small valley through which it ran. This twelve-acre tract consisted of four or five acres of bottom land, the side of a steep, rocky hill covered with brush and scrub, and a level surface of about two acres in area on the top of the hill. The twelves acres did not have any buildings or improvements of like character on it; it did not exceed in value, per acre, the remainder of the land. The value of the grantor's land as a whole was not diminished in value by the conveyance as hereinafter mentioned of the twelve acres in excess of the value of the land conveyed.

On the date last mentioned, A. A. Overton conveyed by deed the tract of twelve acres to his son, O. K. Overton, and the deed was immediately recorded. At the time of such conveyance all of the children of the grantor were duly advised thereof; two of them complained of their father's action with reference thereto, but all duly recognized the fact that the ownership of the twelve acres had passed to O. K. Overton. On November 5, 1918, the latter sold and conveyed the tract just mentioned to his brother, the appellant. There was an error in the description of the land as set forth in the deed, subsequently corrected by the execution of another deed, but all of the other brothers and sisters knew of the sale and conveyance at the time of the transaction or shortly following it.

On the —— day of June, 1918, A. A. Overton died intestate, seized and possessed of the land first described, excepting the twelve acres which he had conveyed to his son O. K. Overton. R. C. Overton, another son, was duly appointed administrator of his

estate. The administrator thereupon employed respondent, C. M. Landis, as his legal adviser touching all matters connected with the administration. Landis was a practicing attorney at Cassville, the county seat of Barry County; he had been probate judge of that county; he owned a set of abstract books and was, or had been, engaged in the business of making and furnishing abstracts of title to lands in Barry County.

After the administration of the estate of A. A. Overton, deceased, had been in progress for about a year and a half, one of the heirs who lived in Oklahoma directed Judge Landis by letter to bring a suit for partition of the land belonging to the estate. All of the other heirs, except appellant, consented to join with her in bringing the action. He declined for the reason that he had a claim against the estate, which was in litigation and undetermined. The petition was filed February 4, 1920. The land which was alleged therein to be owned by the parties as tenants in common and which was sought to be partitioned was described as follows: the northeast quarter of the northwest fractional quarter and the north half of the northeast fractional quarter in section one, township twenty-three, range twenty-nine, in Barry County, Missouri. This of course included the twelve acres owned by appellant. The description of the land to be partitioned was not furnished Judge Landis by any of the parties; they assumed that he knew the land owned by their father at the time of his death. Where he got the description he inserted in the petition he was unable to say; it might have been from an old deed, or tax receipts. He did testify, however, that if he had known of the deed from A. A. Overton to O. K. Overton he would have excepted the land conveyed by it from the land described in the petition.

When the summons was served on appellant (defendant in the partition suit), he did not discover that his twelve acres were included in the land described in the petition. He did not, in fact, know the description of any of the lands by section, township and range; he assumed that Judge Landis knew the land belonging to his father's estate and had correctly described it. His only concern was with respect to the allowance and classification of his demand against the estate before the conclusion of the proceeding for partition. His attorney accordingly filed an answer in which the defendant admitted "that his father A. A. Overton died intestate, seized and possessed of the land described in the plaintiff's petition." When the cause came on for hearing, an interlocutory decree adjudging the interests of the parties and ordering a sale of the land was entered by consent. At the sale had pursuant to the decree the respondents, C. M. and Sadie Landis, became the purchasers, and in due course received a sheriff's deed conveying the

land to them. The interlocutory judgment of partition, the order of sale and the sheriff's deed all followed the description of the land as contained in the petition. Appellant received and receipted for his share of the net proceeds arising from the partition sale. He did not know that his twelve acres had been included in the land partitioned until several months after the proceeding had terminated; the other heirs did not learn of it until the controversy respecting the ownership of the twelve acres arose between appellant and the respondents.

Several months after the partition proceeding above referred to was had, appellant began the erection of a house and outbuildings on the twelve acres, which he subsequently completed at a cost of approximately $2,000. While he was engaged in making such improvements he received a letter from respondent, C. M. Landis, advising that he, Landis, owned the land on which the buildings were constructed and that he would hold them. But appellant had no doubt as to his own title to the land; he thought Landis laboring under a mistake; he therefore paid no heed to his letter, but went on with the erection of the buildings. About the time they were completed respondents, C. M. and Sadie Landis, commenced a suit in ejectment against him to recover possession of the land. In that suit the petition was in conventional form; the answer filed by appellant (defendant therein) admitted possession and then set up his muniments of title, the deeds which constituted his chain of title from A. A. Overton, the common source; he concluded his answer in this wise: ''Wherefore, defendant prays that the court may ascertain the equities existing between plaintiffs and defendant in and to said land and render a decree accordingly.'' In reply plaintiffs set up the judgment in the partition suit as a conclusive adjudication of the title. The judgment went for plaintiffs and on appeal it was affirmed by this court. [Landis v. Overton, 293 S. W. 371.]

As heretofore stated, appellant was the sole defendant in the partition suit. In this proceeding the plaintiffs in that action and the purchasers at the partition sale were made parties defendant. The bill after setting out at length the facts herein summarized alleged that the inclusion of the twelve acres in the land partitioned was the result of a mistake common to all parties to the proceeding and that such mistake was not discovered by him or any of the others until long after the judgment rendered therein had become a finality. It then prays that the partition judgment, sale and deed be set aside and for naught held in so far as they affect the title to the twelve acres in controversy.

The defendants who were plaintiffs in the partition suit joined in an answer in which they plead as an estoppel against plaintiff

the partition judgment and his participation in the distribution of the proceeds of the partition sale. The defendants, C. M. and Sadie Landis, filed a separate answer in which, after setting up the judgment rendered in the partition suit, they averred:

"These defendants say that the Circuit Court of Barry County, Missouri, was the court having full, complete, competent, and original jurisdiction of the subject-matter of said partition suit and also had jurisdiction of the persons of all the parties to said suit and had full and plenary powers to settle, define, ascertain and determine all questions and issues that were within the scope of the pleadings and said cause and that might have been plead, brought forward, or asserted by any of the parties to said suit, whether legal or equitable and all matters pertaining to the title to the land embraced in said partition suit, that might and should have been asserted in said suit.

"These defendants say if plaintiff herein, who (was) defendant in said partition suit, failed to bring forward or assert in said partition suit any title he may have had to any of the lands which were the subject-matter of said suit and stood by and received the proceeds of said land adjudged to him by the court, then if he suffered any injury thereby it was the result of his own negligence. And his allegations in his petition herein that he held and had full knowledge of the existence of the instrument, under which he now seeks to defeat the judgment in partition before the filing of the partition suit and before the decree rendered therein estops, bars and precludes him from now disputing the title of these defendants to the land or any part thereof that was involved in said partition suit."

These defendants also plead by way of estoppel the judgment rendered in the ejectment suit.

It is settled doctrine that courts of equity have jurisdiction to grant relief against the enforcement of judgments at law where such judgments were obtained or entered through fraud, accident or mistake. Mistakes of fact, whether committed by the court, the clerk, or by one of the parties or their attorneys, have been successfully employed as grounds for obtaining the interposition of courts of equity, and securing the relief of the party injured by the mistake. [3 Freeman on Judgments (5 Ed.), 2593; Williams v. Broughton, 50 Mo. 17; Partridge v. Harrow, 27 Iowa, 96; Weir v. Carter 169 S. W. (Tex.) 1113; Cohen v. Dubose, 1 Harper's Eq. 102; 14 Am. Dec. 709.] Specific limitations, applicable in all cases and under all circumstances, upon granting relief against judgments, on the ground of mistake of fact, have never been laid down. There are certain general principles, however, which are always kept in mind.

A court of equity, as such, has no supervisory jurisdiction over other tribunals and has no power to sit in judgment on their acts

to determine whether they have committed errors either of law or of fact, while exercising their authority. In the employment of its power to grant equitable relief with respect to judgments, it does not act in a supervisory or appellate character. So that in the absence of extrinsic facts justifying relief, such as fraud, accident or mistake, equity will not set aside or restrain the enforcement of a judgment or decree on account of matters which were actually, or by due diligence might have been, presented to or considered by the court in arriving at the judgment in question. [Freeman on Judgments, supra, 2521.]

"Courts of equity do not grant such relief for the purpose of giving a defeated party the second opportunity to be heard on the merits of his defense; and the relief is confined to those cases where the judgment is procured by fraud or through excusable mistake or unavoidable accident." [Murphy v. DeFrance, 101 Mo. 151, 158, 13 S. W. 756.] This general rule rests on the maxims: a man shall not be twice vexed for one and the same cause; and it concerns the public that there be an end to litigation.

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issues in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, —these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." [United States v. Throckmorton, 98 U. S. 61, 65.]

In the partition suit in which the judgment under consideration was rendered, the title and ownership of the land as described in the petition in that case were not even technically in issue; the proceeding was adversary in form, but not in fact; the judgment was rendered, not pursuant to a trial of the issues of fact, but on an agreed statement of facts. There was, therefore, no adjudication, as the result of a hearing and submission, of the ownership of the twelve acres of land included by mutual mistake in the lands partitioned. It would seem to follow that such mistake, in so far as relief in equity from its consequences is con-

cerned, should be regarded as having a status in no way different from that of a mutual mistake of fact made by the parties to a deed or other instrument in writing.

Respondents stress appellant's alleged negligence as a ground for debarring him from relief.

"It has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." [2 Pomeroy's Eq. Juris. (4 Ed.), sec. 856.]

Appellant cannot be said to have been culpably negligent, he violated no positive legal duty. If he was negligent, his negligence was in a way superinduced by that of the plaintiffs and their attorney in the partition suit; they are therefore in no position to invoke it as a ground of estoppel in this. [Wood v. Oil Co., 220 Mo. App. 1004, 274 S. W. 894.] The mistake, even though the consequence of negligence, can be relieved against without inflicting loss or hardship upon respondents; not to grant the relief prayed would result in positive injury to appellant.

Ample authority is afforded by many well considered cases for granting, in the circumstances shown by the record in this, the equitable relief asked; to refuse it would be a reproach to the administration of justice. [Currier v. Esty, 110 Mass. 536; Bacon v. Bacon, 89 Pac. (Cal.) 317; Dunning Bros. Co. v. Johnson, 190 Pac. (Cal.) 829; Institute Bldg. & Loan Assn. v. Edwards, 86 Atl. 962; San Antonio Natl. Bank v. McLane, 70 S. W. (Tex.) 201; Lankford v. Phillips, 227 Pac. (Okla.) 413.]

The ejectment suit under the pleadings therein was purely an action at law. The pleading on the part of the defendant pleaded neither an equitable defense nor a cross-action asking affirmative equitable relief. The issue as to a mistake of fact inherent in the judgment in the partition proceeding was not presented by the pleadings on either side. Nor was the defendant (appellant here) bound to tender such

issue under pain of being concluded with respect thereto by the judgment in the cause. He was entitled to let the judgment go at law and then institute his suit in equity, as he has done. The judgment in the ejectment suit is not *res adjudicata* as to the matters in issue in this. [Witte v. Storm, 236 Mo. 470, 139 S. W. 384.]

The premises considered, appellant is entitled to have set aside and cancelled the judgment, both interlocutory and final, the order of sale and the sheriff's deed in the partition proceeding in the petition described and set forth, in so far as they relate to the twelve acres alleged to have been included therein by mistake, or affect appellant's title thereto, upon condition that appellant, within a reasonable time to be fixed by the trial court pay to respondents, C. M. and Sadie Landis, or into court for them, a sum of money bearing the same proportion to the whole sum paid by the purchasers at the partition sale as twelve acres bear to the whole number of acres sold at such sale; upon the payment of said sum to said respondents or for them, appellant is further entitled to have contribution with respect thereto from the plaintiffs in the partition suit (defendants in this), and to have judgment herein against each of them for such proportion of the sum just referred to as his share on distribution of the proceeds of the partition sale bore to the whole sum distributed.

The judgment of the circuit court is reversed and the cause remanded to be further proceeded with in accordance with the views herein expressed. All concur.