JAY W. JONES and FLOSSIE R. JONES, Appellants, v. CHARLES ARNOLD, FERNITA SCOTT, FRANCIS ARNOLD, NORMAN ARNOLD, PRESTON ARNOLD and RONALD ARNOLD, Respondents, No. 41009—221 S. W. (2d) 187.

Division One, May 9, 1949.

Motion for Rehearing or to Modify Opinion

Overruled, June 13, 1949.

*Boyd Ewing* for appellants Jay W. Jones and Flossie R. Jones; *Ewing, Ewing & Ewing* of counsel.

*Joe W. Collins* for respondents Charles Arnold, Fernita Scott and Francis Arnold, and Guardian ad Litem for Norman Arnold, Preston Arnold and Ronald Arnold, minors.

DALTON, C.—Action in two counts: (1) To quiet and determine title to described real estate in Cedar county on the ground that title had theretofore been quieted in plaintiffs' predecessor in title and that the claims of the defendants were barred by a prior judgment (which judgment purported to reform the deeds under which the defendants claim and further determined title against them); and (2) to reform the deeds under which defentlants claim as contingent remaindermen subject to the life estate of Frank Arnold (so that the deeds will convey the fee to Arnold) and to quiet the title against defendants. Defendants by answer and cross action seek to establish their claimed interest as contingent remaindermen under the mentioned deeds and to have vacated and set aside, for alleged fraud in its procurement, the judgment relied upon by plaintiffs. The trial court vacated and set aside the prior judgment, refused to reform the deeds and quieted the title as claimed by de-

164

fendants. Plaintiffs have appealed and contend there is no evidence in the record to support the findings and judgment of the court.

The evidence tends to show that J. H. Arnold died intestate, in 1914, seized and possessed of the described real estate and other lands. He was survived by his widow Sarah E. Arnold and three adult children, Emily Collins, Allie Mae Arnold and Frank Arnold. Defendants Charles Arnold, Fernita Scott and Francis Arnold are the children of Frank Arnold and defendants Norman Arnold, Preston and Ronald Arnold are his grandchildren and sons of Charles Arnold.

In May 1915, pursuant to an oral agreement entered into between the widow and three children of J. H. Arnold and for reasons that need not here be stated, the three children conveyed to their mother, Sarah E. Arnold, all of their interests in the real estate owned by their father at the time of his death and she immediately thereafter, by two separate deeds, conveyed to "Frank Arnold and his bodily heirs" the real estate here in question. In acknowledging the deed to one tract she expressly assigned her right of dower and in the deed to the other tract she reserved for herself a life estate and her acknowledgment shows "Dower not assigned." Other conveyances were made to the other heirs. All deeds were prepared by and acknowledged before the same party and were recorded on the same date pursuant to the same agreement. The consideration stated in the deeds was $1.00 and "love and affection." The detailed provisions of the several deeds conformed to the agreement of the parties and correctly expressed the intention of the grantor and grantees when executed and delivered.

Thereafter, Frank Arnold and wife, as owners in fee simple, executed two deeds of trust on the property here in question to the Duvall-Percival Trust Company to secure certain notes therein described. The deeds of trust have been satisfied of record. On January 9, 1922, Sarah E. Arnold for a recited consideration of $1.00 executed and delivered to Frank Arnold a quitclaim deed to one of his two tracts of land. In this deed she recited that the deed was "made in release of and satisfaction for" a prior warranty deed dated May 17, 1915. On December 18, 1924, Sarah E. Arnold for a recited consideration of $1.00 executed a quitclaim deed to Frank Arnold covering the other tract he had acquired from her.

On January 20, 1925, Sarah E. Arnold by warranty deed, for a consideration of $1.00 purported to convey to Frank Arnold the fee simple title to one of the two tracts of real estate previously conveyed. This deed recited that it was made for the purpose of correcting the original warranty deed of Sarah E. Arnold "and to carry out the real purpose and intent of said deed and also to convey the life estate retained in said conveyance for it was the intention and so understood by all parties in interest that said grantee should have fee simple title subject only to the life estate of the grantor, and

by this conveyance she seeks to carry out the full original intent and purpose of same and also at this time to relinquish all rights and establish in said Frank Arnold a fee simple title in the above described land.''

On July 25, 1925, Frank Arnold and wife for ''one dollar and other valuable consideration'' by warranty deed purported to convey the fee simple title to all of the described real estate to T. R. Montgomery of Craig County, Oklahoma, ''subject to mortgage of $4800 which grantee agrees to assume and pay.''

In 1927, Frank Arnold and his three children were residing in Oklahoma. Montgomery, who lived about twenty miles away, visited them often. The several Arnold children were between 14 and 18 years of age. Montgomery told Frank Arnold there was a defect in the title to the lands acquired from him; that it was necessary to have ''a friendly suit'' to straighten out the title; and that ''he would go down and have it done.'' The evidence tends to show that both Arnold and Mongomery knew what the defect was. Later, Montgomery told Arnold the suit had been brought and the title straightened up. Neither Montgomery nor Frank Arnold at any time mentioned the matter of the suit to the Arnold children. Arnold made no arrangements to have the children represented and they never even learned of the fact that a suit had been instituted against them until they received notice of the present action. The evidence further tends to show that Montgomery, after conferring with Frank Arnold, conferred with Sarah E. Arnold and S. E. Osborn, his attorney in Cedar county. The attorney conferred with Sarah E. Arnold and obtained an affidavit in conformity with the recital in her deed of January 20, 1925.

The action was instituted by Montgomery in the circuit court of Cedar county to reform the two warranty deeds by striking out the words ''and his bodily heirs.'' The grounds assigned for reformation were that Sarah E. Arnold intended to convey a fee simple title; that Frank Arnold expected to receive title in fee simple; and that by mistake of the scrivener the deeds did not express the mutual intention of the parties. Sarah E. Arnold and Frank Arnold, who had parted with title and possession, were not made parties to the action. Only the three minor children of Frank Arnold, nonresidents of the State of Missouri, were made defendants and an order for service by publication was obtained. Proof of publication was duly made, the defendants were three times called, but did not appear and a default was entered. J. F. Rhodes, a reputable attorney of El Dorado Springs, was appointed guardian ad litem for the minor defendants. He filed an answer on their behalf stating that he was unfamiliar with the facts and asking the court to require strict proof. The minor-defendants had lived in Cedar county, but in 1927, as stated, they were residing with their father in Oklahoma.

They never knew of or had any communication with Mr. Rhodes, who offered no testimony on their behalf. The relief sought by plaintiff was granted. While the judgment was not entered by consent, the evidence shows that Mr. Rhodes "saw the judgment and it was agreeable with him." As far as opposing counsel knew, Mr. Rhodes "consented to the judgment that the court entered." It was not a judgment entered by consent, but there were no objections thereto and no appeal was taken.

The decree reforming the deeds and quieting title was entered November 28, 1927. Respondents' answer and cross action to vacate and set the decree aside for fraud in its procurement was filed December 9, 1947. No issue was raised by the reply concerning any statute of limitations and there was no pleading or proof as to the circumstances under which appellants acquired title, nor concerning their knowledge or lack of knowledge of the alleged fraud in the procurement of the judgment. The parties stipulated only "that the plaintiffs herein have acquired by mesne conveyance from Frank Arnold whatever title Frank Arnold could convey by the deed which he gave to T. R. Montgomery when considered in connection with the 1927 law suit." Frank Arnold, the life tenant, was still living. Other facts will be stated in the course of the opinion.

■ Does the evidence sustain the finding of fraud in the procurement of the prior judgment? In a direct proceeding in equity to set aside a judgment on the ground of fraud, the burden rests upon the party seeking such relief to establish the alleged fraud by evidence that is so clear, cogent and convincing as to leave no reasonable doubt of such fraud, and the fraud must be in the procurement of the judgment, as distinguished from matters going to the merits of the cause. Elliott v. McCormick, 323 Mo. 263, 19 S. W. (2d) 654, 658; Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S. W. (2d) 1031, 1036; Sutter v. Easterly, 354 Mo. 282, 189 S. W. (2d) 284.

■ The record upon its face shows a valid subsisting judgment, regular in all material respects and binding upon the defendants named therein. See Jones v. Driskell, 94 Mo. 190, 199, 7 S. W. 111. The court below made no finding of irregularity or invalidity upon the face of the record and in this proceeding we may not review the prior record. "A court of equity, as such, has no supervisory jurisdiction over other tribunals and has no power to sit in judgment on their acts to determine whether they have committed errors either of law or fact, while exercising their authority." Overton v. Overton, 327 Mo. 530, 37 S. W. (2d) 565, 567.

■ Appellants argue that the "judgment became absolute under Secs. 1247 and 1249 R. S. 1939, long prior to the institution of the instant cause"; and that it "is not voidable now." The mere fact that no appeal was taken and no bill of review filed within the period provided by statute and that the judgment became final and conclusive

between the parties is no bar to a direct proceeding in equity to vacate and set aside the judgment for fraud in its procurement. Fadler v. Gabbert, 333 Mo. 851, 63 S. W. (2d) 121, 129; Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977, 983.

In the premises of the deeds in question, the name of the grantee was designated as "Frank Arnold and his bodily heirs." The form of the deeds and the efforts evidenced by subsequent deeds and by litigation to obtain a title in fee simple sufficiently show a recognition of the fact that the children of Frank Arnold had a contingent interest of record in the described real estate. The purpose of the original suit was to defeat such record interest. Montgomery insisted on bringing the suit and counsel drafted the petition with great care.

The defendants in the prior suit had a valid meritorious defense thereto, towit, that the words sought to be stricken out by reformation were intentionally inserted; that the estate conveyed was in compliance with an agreement entered into between the widow and children of J. H. Arnold; and that the deeds were executed in the form shown to carry out an intention expressed by J. H. Arnold in his lifetime. The fact that, after a lapse of more than twenty years, the defendants in the present action were able to make the same defense and establish it to the full satisfaction of the trial chancellor is sufficient to show that prima facie the defendants in the original action had a good and sufficient meritorious defense. Beil v. Gaertner, 355 Mo. 617, 197 S. W. (2d) 611, 616; Hockenberry v. Cooper County State Bank, supra (88 S. W. (2d) 1031, 1037); Cherry v. Wertheim (Mo. App.), 25 S. W. (2d) 118, 121.

Through no fault of their own these minor defendants were totally deprived of an opportunity to present their meritorious defense. They never knew the guardian ad litem who was appointed to represent them and they never learned of the existence of the suit. While they had a meritorious defense it was not presented. There was no contest and no evidence whatsoever was offered on their behalf in the trial of the cause. There is no contention that they were guilty of negligence in not presenting their defense, or that they have been guilty of laches or want of diligence in not discovering the alleged fraud. See Overton v. Overton, supra; Cherry v. Wertheim, supra; Monmouth College v. Dockery, 241 Mo. 522, 551, 145 S. W. 785. The appointment of the guardian ad litem and the filing of his answer formally complied with the statutes and facilitated the entry of judgment. Such formal compliance did not make the proceeding such an adversary one as to bar relief in equity. If the judgment was in fact procured by fraud and collusion, as charged, the fraud vitiated the whole proceeding and the defendants are entitled to equitable relief. Spotts v. Spotts, supra (55 S. W. (2d) 977, 983). That defendants were deprived of their record interest

168

in the described real estate and injured by the decree clearly appears, since the prior decree was pleaded in bar of their claim. However, "the fact that injustice results from the judgment is by no means sufficient to invoke equitable interposition." Dobbs v. The St. Joseph Fire & Marine Ins. Co., 72 Mo. 189, 191. The defendants had no available or adequate remedy at law.

The evidence tending to show that the original action was instituted and prosecuted by consent and agreement of Montgomery and Arnold with a full knowledge of defendants' interest in the described real estate; and that Frank Arnold and Sarah E. Arnold knew of defendants' meritorious defense was not sufficient to show fraud in the procurement of the judgment. Such evidence tended only to show a fraudulent cause of action. W. H. Johnson Timber & Realty Co. v. Belt, 329 Mo. 515, 46 S. W. (2d) 153, 156; Gallagher v. Chilton (Mo. Sup.), 192 S. W. 409, 412. Courts of equity do not vacate judgments "for the purpose of giving a defeated party a second opportunity to be heard on the merits of his defense." Murphy v. De France, 101 Mo. 151, 158; 13 S. W. 756; Winchell v. Gaskell, 354 Mo. 593, 190 S. W. (2d) 266, 272.

The chancellor found that there was fraud and collusion by Montgomery and Arnold in purposely keeping the minor defendants from knowing anything about the prior case; that there was no adversary trial or decision of the issues of the case; and that the defendants never had knowledge of the suit, being kept in ignorance by the acts of Montgomery and Arnold. The rule relied upon is set out in Overton v. Overton, supra (37 S. W. (2d) 565, 568). And see Hockenberry v. Cooper County State Bank, supra; Lieber v. Lieber, 239 Mo. 1, 44, 143 S. W. 458; Street v. Town of Alden, 62 Minn. 160, 64 N. W. 157, 158; Keith v. Alger, 114 Tenn. 1, 22; United States v. Throckmorton, 98 U. S. 61, 65; 31 Am. Jur. Judgments, Sec. 673, p. 240.

In Fadler v. Gabbert, supra (63 S. W. (2d) 121, 132), it is said that: "All Missouri cases and all other cases emphasize as an act of fraud entering into the procurement of a judgment any conduct which tends to trick an adversary out of a defense or to blind him to the pendency of an action." This case further points out that an act which one has the lawful right to do may, under particular circumstances, be "a device intended to prevent the defendants from obtaining knowledge of the pendency of the action." Also see Cantwell v. Johnson, 236 Mo. 575, 600, 139 S. W. 365; 31 Am. Jur. Judgments, Sec. 660, p. 234.

Appellants insist that "the fact these minors were not informed of this proceeding is entirely consistent with honest and normal conduct and intentions upon the part of Montgomery and Arnold"; that the evidence in support of the alleged fraud amounts to no more than "mere suspicion, insinuation or presumption"; and that the trial

court "presumed an intention on the part of Frank Arnold to defraud his children . . . because he had warranted the title to Montgomery." We must determine whether facts and circumstances were shown from which a legitimate inference of fraudulent intent and purpose should be drawn. Zehnder v. Stark, 248 Mo. 39, 50, 154 S. W. 92; Ray County Savings Bank v. Hutton, 224 Mo. 42, 71, 123 S. W. 47.

There was evidence in the record from which the trial chancellor could infer and properly find that the original action was not prosecuted in good faith, but was a mere scheme and plan to use the lawful processes of the court to wrongfully deprive the defendants of their interest in the described real estate without them having any real opportunity to defend the action; and that the claim was conceived in fraud and the machinery of the law was resorted to for the purpose of taking from the said children what was known to be their lawful interest in the described real estate. Fadler v. Gabbert, supra. Compare Irvine v. Leyh, 124 Mo. 361, 366, 27 S. W. 512. The inference could be drawn that the minor defendants were purposely kept in ignorance of the original proceedings; that the purpose of Montgomery's visit to Frank Arnold's home was merely to advise him of the proposed plan and to seek his aid in protecting the plan and facilitate its consummation. When Montgomery visited Arnold he well knew that Arnold's interests were in direct conflict with the interest of the children; and that, if there was any publicity, Arnold would most likely be the one to learn of it and could prevent any defense. While Montgomery advised Arnold of his proposed action, he concealed such fact from Arnold's children. Under the circumstances shown an inference can be drawn that the concealment was willful and intentional. Montgomery later returned and told Arnold that the plan had been successfully carried to completion, but he did not advise the children. While silence or concealment becomes fraudulent only where there is a duty to speak and disclose, a legal duty to disclose may exist where there is no existing fiduciary relationship between the parties and where no special confidence is expressly reposed. The duty to disclose may arise from the circumstances of the case, including inequality of condition and the superior knowledge of one party, which knowledge is not within the fair and reasonable reach of the other party. McAdams v. Cates, 24 Mo. 223, 226; Barnard v. Duncan, 38 Mo. 170, 186; Wheeler v. Missouri Pac. R. Co., 328 Mo. 888, 42 S. W. (2d) 579, 583; National City Bank of St. Louis v. Carleton Dry Goods Co., 334 Mo. 339, 67 S. W. (2d) 69, 73(3); Wonderly v. Lafayette Co., 150 Mo. 635, 650, 51 S. W. 745; Vendt v. Duenke (Mo. App.), 210 S. W. (2d) 692, 699; Sec. 902, Vol. III, p. 553, Pomeroy's Equity Jurisprudence (Fifth Edition); 23 Am. Jur. Fraud & Deceit, Secs. 77 and 78; 37 C. J. S. 245, Sec. 16(b). Whether or not a duty to disclose exists and whether or not,

the circumstances amount to fraud must be determined on the facts of the particular case. 23 Am. Jur. Fraud & Deceit, Sec. 79, p. 856; 49 C. J. S. 736, Sec. 372; Fadler v. Gabbert, supra (63 S. W. (2d) 121, 130).

"It is difficult to see how fraud could be practiced more directly upon one entitled to present his rights to a court than by keeping him in ignorance of the proceedings. It is true that in most cases of extrinsic fraud the defendant has said something directly to the person whose rights were involved amounting to representations that it was not necessary for such person to take any part in the proceedings. In other cases, acts have been held to amount to such representations. But the rule allowing the maintenance of an action in equity for extrinsic fraud should not be limited so strictly as to require as a basis evidence of representations made directly to the one defrauded." Purinton v. Dyson, 8 Cal. (2d) 322, 65 Pac. (2d) 777, 113 A. L. R. 1230, 1233.

We think that under the facts and circumstances shown by this record the law imposed a duty upon Montgomery to disclose the fact of this litigation to defendants therein and that the concealment thereof constituted extrinsic and collateral fraud. In view of all the evidence the inference could and should be drawn that service by publication was selected and used as a device to get valid service on the minor defendants, but with the intent of concealing from them the fact that an action had been instituted against them and to prevent them from having actual knowledge of the litigation or any opportunity to present their defense. It is well settled that fraud may be proven by circumstances. Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297, 302; Black v. Epstein, 221 Mo. 286, 310, 120 S. W. 754.

We are not unmindful of the fact that there was oral testimony before the trial chancellor tending to show that the action was prosecuted in good faith for an honest purpose, solely to correct a mistake of the scrivener of the deeds and to make the deeds conform to the mutual intention of the parties to the deeds; and that service by publication was selected and used in good faith as an incident to such procedure, but the trial chancellor refused to believe or accept that theory of the facts in the case. The finding of fraud and collusion in the procurement of the judgment is sustained by the record in the case.

 Appellants further contend that "there is no competent or material evidence to support the finding of the trial court that the 1915 deeds were not drafted through mistake and that it was the intent of Sarah E. Arnold to convey the land to Frank Arnold and his bodily heirs."

The rules governing a proceeding in equity to reform a deed and the quantum of proof necessary to such reformation are fully reviewed

in Feeler v. Gholson (Mo. Sup.), 71 S. W. (2d) 727 and need not be repeated here. Appellants insist that there is ample evidence to support reformation; that the deeds appear to have been written on ordinary warranty deed forms with the grantee named only in the premises of the deeds as ''Frank Arnold and his bodily heirs''; that prior attempts were made to correct the mistake of the scrivener; that the grantor made an affidavit in conformity with the recital in her deed of correction; that Frank Arnold mortgaged and later sold the property as owner in fee; and that he testified he thought he ''had a good title to it,'' when he conveyed the land to Montgomery.

We think the evidence tending to show that the deeds were made in accordance with an agreement between the widow and children of J. H. Arnold, deceased, and in conformity with the then intentions of the parties outweighs the evidence relied upon by appellants. This evidence fully sustains the chancellor's finding that ''there was no mistake at the time the deeds were made and delivered.'' We should and do defer to the action of the trial chancellor in refusing reformation. The decree, as entered, setting the former decree aside, refusing to reform the deeds and determining and quieting title as prayed by defendants-respondents is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.