James DAVIS, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Respondent.

No. 47365.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Haskell Imes, Blackford, Imes, Compton & Brown, Kansas City, for appellant.

Howard A. Crawford, Robert D. Youle, Joseph E. Stevens, Jr., Lathrop, Righter, Gordon & Parker, Kansas City, for respondent, Southwestern Bell Telephone Co.

WESTHUES, Judge.

Plaintiff James Davis filed this suit in the Jackson County Circuit Court. In Count I of the petition, plaintiff asked that a judgment in the sum of $146.95, obtained by defendant Southwestern Bell Telephone Company against plaintiff, be set aside on the ground that it was obtained by fraud. In Count II, plaintiff asked for $50,000 damages on the theory that he was discharged from his position with Swift & Company because of a wrongful garnishment issued at defendant's request to collect the judgment mentioned in Count I. Count I of the petition was tried as an equity case. The trial court found against plaintiff on this count. The trial court further dismissed Count II on the theory that a judgment in defendant's favor on Count I destroyed plaintiff's claim for damages in Count II. From the judgment entered, plaintiff appealed.

The evidence shows the following: James Davis, plaintiff in this suit, his wife Naomi, and their son Warner, were made defendants in a suit filed by the Southwestern Bell Telephone Company in a magistrate court in September, 1955. The object of the suit was to collect a telephone bill in the sum of $139.95 which had accrued on a telephone located in James Davis' house. The telephone was installed on July 8, 1954, and taken out in December of that year. On October 12, 1955, judgment was entered against all defendants above named for the sum of $139.95 principal and $7 interest or a total sum of $146.95. Execution was issued and returned unsatisfied. A garnishment writ or summons was served on Swift & Company, employer of James Davis, on January 9, 1956. This was released on January 14, 1956, when James Davis signed an agreement to pay $2 a week on the judgment.

Sometime in 1953, James Davis and family moved to 411 West 43rd Street, Kansas City, Missouri, and lived at that address until the end of 1955. In July, 1954, the following named persons were living at that address: James Davis and his wife, Naomi; Joyce Davis, wife of Warner; Juanita Cotton, a daughter of James and Naomi, along with her two children; a small child of Warner; and a child of the oldest son of James and Naomi. Warner was in a penal institution in the State of Kansas from April, 1954, to May, 1955. He then moved in with the family at 411 West 43rd Street.

Juanita Cotton testified that when she went to live with her parents in 1954, she had her telephone transferred from her old residence to her parents' home. This telephone was taken out, so said Juanita, because she was not working and could not pay for the telephone. It was shown, however, that a large bill was left unpaid. In July, 1954, according to plaintiff's witnesses, Joyce (wife of Warner) applied to have a telephone installed and had it listed in Warner's name. At this time, Warner was serving time in a penal institution. It was shown that a large part of the telephone bill was for long distance calls between Juanita Cotton and her alleged husband who it was said was in the Armed Service and was stationed in Colorado and California during the time. James Davis, Juanita's father, said that Juanita "and her husband were separated at that time" and that "she was living—well, it is just like one in the family." All grown persons living at the home made use of the telephone.

Plaintiff James Davis testified that he had been having trouble keeping track of his bills; that he had had his wages tied up in garnishment proceedings; that his employer, Swift & Company, had warned him that if more of these garnishment cases were had he would lose his job. James had been working for Swift & Company for many years. Plaintiff testified that he had a conference with the family about the financial situation and borrowed money to

pay all of his bills then pending. Soon thereafter, on September 22, 1955, a constable served a writ or summons on the three defendants named in the suit of the Telephone Company. The return on this writ showed that it had been executed "by reading the same to the within named defendant Naomi Davis, and Further Executed by leaving a copy thereof at the usual place of abode of the within named defendant's James Davis & Warner Davis with a person of the family over the age of 15 years."

Plaintiff James Davis testified he had no knowledge of the suit; that he did not owe the Telephone Company and had not authorized the installation of the telephone. The first time he heard about the judgment having been entered against him was when the garnishment writ was served on his employer Swift & Company; that he was then discharged from his employment.

It is plaintiff's theory that the Telephone Company conspired with the members of the Davis household to keep the suit for the telephone bill a secret thereby preventing James Davis from successfully contesting the case.

A day or two after the writ was served by the constable, the Davis family, James Davis not being present, held a conference and it was decided not to let James Davis know about the suit. Note what the wife of plaintiff had to say:

"Q. Now, what happened after you talked to Joyce Davis about this telephone bill? A. Well, we said we woudn't tell my husband about it, that she and her husband, you know, would agree and pay the bill, to get it straight, and we wouldn't let him know anything about it.

"Q. That is your husband? A. Yes, wouldn't let Jim know anything about it, because he would be angry about it.

"Q. Did you talk to Warner about the papers, too? A. Yes, and Warner.

"Q. What was said between you and Warner about it? A. Warner said he would go—he was going to take care of the bill and not let his father know about it, because he knowed that he would be angry about it and he didn't want him to lose his job or anything." Warner Davis gave the following testimony:

"Q. * * * What did you, Juanita and your mother agree to do about this bill? A. I agreed to pay the phone bill. I told my mother that I would go down and talk to the lawyer. And I can't say that I went exactly down that same day. But I did go down there, and when I went to the lawyer's office, I can't remember his name at the present time."

Prior to giving the above statement, Warner had testified to the following:

"Q. Now, Mr. Davis, do you know why the bill was so high that time? A. Yes, I do.

"Q. Can you tell the Court why it was so high? A. My brother-in-law had made previous phone calls—well, he was in the service at that time, and he had called his wife a number of times, that is how the bill got that high.

"Q. And did you talk to Juanita about having her or her husband pay that bill or their share of the bill? A. Well, my sister agreed to pay me out on it."

Evidently someone at the Davis home had spoken to the constable about wanting to pay the bill. We note on the return the notation "Wants to arrange settlement told Def. Naomi Davis to call Mr. Gunnels." Mr. Gunnels, a lawyer for the Telephone Company, is the one plaintiff charges with conspiring with his family in obtaining the judgment without plaintiff's knowledge. Warner Davis stated that he did go to see Mr. Gunnels and his evidence as to what occurred at this conference is as follows:

"Q. Did you ever pay any money yourself on the bill? A. No, I did not.

"Q. Now, did you, in talking to this lawyer over there, was there any discussion about the previous garnishment your father had had? A. Well, I told him that my father was capable of losing his job if they filed suit against him. That is what he kept on telling me, if I didn't pay the bill, that he would file suit against my father. I told him I didn't want my father to know anything about it.

"Q. Did he say file suit or did he say garnish? A. I think he said file suit, I am not too sure.

"Q. But you had already received the summons in the case. Now, by receiving the summons, did that mean to you that suit had been filed? What did that mean to you? A. Well, I thought on behalf, he would already been filed. But I wasn't too sure, I am not too familiar with the summons, after I went down and talked to him, I didn't think suit had been filed then, because I told him I would pay the bill and he said if I would pay the bill that he would—

"Q. You testified that you had already received these papers like the last two pages of Exhibit 2, isn't that right? A. That's right.

"Q. Did you know what these papers were? A. Yes, I did, after I read them.

"Q. What were the papers that you received from your mother? A. Summons.

"Q. You had already received a summons? A. Yes.

"Q. Now, did you ever go down to see this lawyer again? A. No, I didn't, not as I can recll, I don't think I did.

"Q. Do you recall what date that you were supposed to have this bill paid by? A. Well, he give me a week or so to pay—in order to pay the bill or pay on the bill, and I never did go down—I don't remember the date it was in October or something like that, October or September, it was one of the two, I am not sure.

"The Court: You say he gave you a week or so to pay the bill?

"The Witness: Or either pay on it, yes, sir.

"Q. (By Mr. Imes) Then to summarize your testimony, as I understand it, you told this gentleman, the lawyer, that your father didn't know anything about the bill, is that correct? A. I told him that my father didn't know anything about the bill and that he had had garnisheements on his job before and my father would get pretty angry, you know, if it come up against him, that is the reason I didn't want to let him know about it."

It is evident that in Warner's alleged conversation with Mr. Gunnels wherein he spoke of filing suit he had reference to garnishment proceedings. Suit had been filed and summons served. That is what caused Warner, so he said, to go to see the lawyer.

We think it is apparent that the evidence fails to show any fraud on the part of the Telephone Company. No inference of fraud can be justly drawn from the promise, if made, by Mr. Gunnels not to take any action or institute garnishment proceedings *if* Warner made payments on the telephone bill. Note that Warner testified that Mr. Gunnels gave him a week to pay the bill or to pay on the bill, and that he never did make any payments, nor did he ever again talk with Mr. Gunnels.

Under point one in his brief, plaintiff states that "The Appellant Proved That He Had a Meritorious Defense to the Respondent's Claim Raised in the Magistrate

Court and That He Was Misled into Not Presenting His Said Defense As the Direct Result of Collusion Between Other Defendants in Said Magistrate Case and the Respondent." It should not be necessary to cite authorities to demonstrate that the evidence offered by plaintiff is insufficient to authorize vacating the judgment in question. However, we shall refer to a few authorities. In 49 C.J.S. Judgments § 372, p. 735, it is stated that "In order to obtain relief against a judgment on the ground of fraud it must appear that the fraud was practiced or participated in by the judgment creditor or his agent or attorney. The fraud must have been practiced on the opposite party or his agents or attorneys, or on the court; fraud between codefendants will not affect the plaintiff, however gross it may be." See also Jones v. Jones, Mo.App., 254 S.W.2d 260, loc. cit. 261(1, 2); Jones v. Arnold, 359 Mo. 161, 221 S.W.2d 187, loc. cit. 191(1, 2); Johnson v. Stull, Mo., 303 S.W.2d 110, loc. cit. 115(2, 3).

Defendants in the magistrate court, including plaintiff in the case before us, were duly served with process. The only promise of Mr. Gunnels (lawyer for Telephone Company), if made to Warner Davis, was that if Warner would make payments on the bill, the attorney would not garnishee James Davis' wages. Mr. Gunnels was not obligated, nor did he promise, not to take judgment. Warner did not keep his promise. We rule that the evidence was insufficient to justify vacating the judgment in question.

We are not satisfied that plaintiff, as he claims, proved that he had a meritorious defense to the Telephone Company's claim in the magistrate court. A telephone installed in the Davis home and listed in the name of Juanita Cotton was taken out. A substantial bill was left unpaid. Then, a telephone was installed in the name of Warner who did not live at that house at any time while the telephone was there, he being in a penal institution. The telephone, while in service, was used by all of the family, especially Juanita who, plaintiff said, was living there just like one of the family.

Plaintiff has our sympathy because it is evident that his family, Warner and his wife, and Juanita, were imposing on him. These people evidently were not worried about paying bills. Note Warner's promise to pay the telephone bill and at the time the present suit was tried he had not paid a cent on that bill. Then, too, there is the written promise of plaintiff to pay the bill. This promise was made on January 14, 1956, after the judgment had been entered. So, whether James Davis, as the head of the family, had a meritorious defense against the Telephone Company's bill is doubtful.

Plaintiff further says in his brief that the trial court erred in dismissing Count II of his petition. Plaintiff says he may recover on Count II even though he does not prevail on Count I. He cites Sec. 506.040, V.A.M.S., and Watson v. Bugg, 365 Mo. 191, 280 S.W.2d 67, for his authority. We do not find anything in the statute or in the cited case that would aid plaintiff. Certainly, plaintiff is not entitled to try the issue of whether the judgment in question should be set aside before a court of equity and again before a jury. The judgment in favor of the Telephone Company on Count I has taken the very heart out of Count II. Until such a judgment is set aside, it is res judicata as to the validity of the judgment obtained in the magistrate court.

We have reviewed this case de novo and our conclusion is the same as that of the trial court, namely, that under the evidence plaintiff is entitled to no relief.

The judgment of the trial court is hereby affirmed.

All concur.