GENERAL REFRACTORIES COMPANY, Appellant, v. WILLIAM E. HOWARD and AMERICAN REFRACTORIES COMPANY.—44 S. W. (2d) 65.

Division One, November 20, 1931.

*Leslie B. Hutchison* and *James Booth* for appellant.

1140

*W. L. Cole* and *T. P. Hukriede* for respondents.

RAGLAND, J.—This is a suit in equity to reform two deeds on the ground of mutual mistake. The judgment *nisi* was for defendants, dismissing plaintiff's bill. From such judgment plaintiff prosecutes this appeal.

The facts lie within small compass. Sometime prior to October 3, 1922, the American Refractories Company through its agents, operating as prospectors, had discovered a body of fire clay on respondent Howard's land in Gasconade County. On the date just mentioned a representative of the Refractories Company went to the Howard land for the purpose of purchasing and securing from the owner a conveyance of the fire clay together with the right to mine and remove it. The location of the clay pit, as it was termed by the witnesses, and which had been discovered by the holes bored in the surface of the ground by the prospectors, was well known to

both Krewson, the representative of the Refractories Company, and Howard, the owner of the land. After some negotiations between Krewson and Howard $1500 was agreed upon as the purchase price for the fire clay. Thereupon they, with several attendants, proceeded to survey and mark off the land containing the deposit. They began at the southeast corner of respondent Howard's land (the southeast corner of the north half of the north half of the northwest quarter of Section 14, Township 42, Range 5 west) and ran west 1200 feet and from thence north 174 feet, thereby establishing the point of beginning for marking off the boundaries of the land containing the mineral rights to be conveyed. From such beginning point they ran west 250 feet, thence north 250 feet, thence east 250 feet and thence south 250 feet to the beginning. The attendants carried the tape and called the measurements under the directions of Krewson and Howard, the former making notes as the survey proceeded.

When the survey was completed Howard and Krewson went to a bank at Ownesville where the former transacted his business and directed an officer of the bank, who was also a notary public, to prepare a deed. · The deed was drawn and executed by Howard and he was paid the $1500 by Krewson. The deed described the land as follows:

"All the fire clay, diaspore, diasporite and other alumina minerals in and underlying all that certain tract of land situate, lying and being in the County of Gasconade and State of Missouri, and described as follows:

"Commencing at a point fifteen hundred feet (1500) West and one hundred seventy-four feet (174) North of the southeast corner of the north-half of the north-half of the northwest quarter of Section Fourteen (14) Township Forty-two (42) of Range Five (5); thence running west one hundred fifty feet (150); thence north two hundred fifty feet (250); thence east one hundred fifty feet (150); thence south two hundred fifty feet (250) to the place of beginning."

The relative locations of the land which actually contained the clay deposit, and which plaintiff's witnesses say they marked off on the occasion just referred to, and the land described in the deed may be visualized from the following rough drawing:

1142

North half of the North half Northwest quarter,
Section 14, Township 42, R. 5.

150'

250
ft. sq.

174'

1200 ft.

1500 ft.                                    S. E. Cor.

The lines and measurements appearing in light face represent the correct description of so much of Howard's land as contained the clay deposit which he sold to the American Refractories Company; those in bold face the land described in the deed, under which there were no fire clay deposits whatever.

On July 26, 1924, the American Refractories Company sold, and by its deed attempted to convey, to appellant, General Refractories Company, the clay deposit the former had purchased from respondent Howard. In its deed to the General Refractories Company the description of the property contained in Howard's deed was followed. The fact that the property was misdescribed in both deeds was not discovered until appellant entered upon the premises preparatory to mining the fire clay in the early part of 1928. Upon respondent Howard's refusal to make a deed of correction this suit was instituted. Both Howard and the American Refractories Company were made defendants. The petition alleges that through mutual mistake the property intended to be conveyed was misdescribed in each of the deeds and asks the reformation of both. The answer of the American Refractories Company admits the allegations of the petition and that appellant is entitled to the relief prayed for. The answer of Howard is in effect a general denial.

In support of the judgment *nisi* respondent Howard contends that the evidence does not afford the character or degree of proof required for the reformation of a written instrument on the ground of mutual mistake. We have not set out the evidence circumstantially or in detail because the facts which seem to us determinative of the question are either conceded or established by overwhelming proof.

There was but one fire clay deposit on the southeast portion of respondent Howard's land. That deposit in its entirety he sold to the American Refractories Company. Its precise location and extent, which had been disclosed by borings, were known to both

Howard and the American Refractories Company. These facts Howard in effect admitted on the witness stand. The only purpose he had in making the deed to the American Refractories Company was to convey to it the specific clay deposit which it had bought. But the deed according to its terms conveyed premises adjacent to, but which contained no part of, the deposit. There is no suggestion of fraud on the part of either party. Under such circumstances the inference necessarily arises that the delivery and acceptance of such a deed was the result of mutual mistake. The evidence does not show whether the misdescription contained in the deed arose through the mistake or inadvertence of the scrivener, or from incorrect information given him by Krewson. But whether the one or the other is of no consequence. "It is not necessary, in order to establish a mistake in an instrument that it shall be shown that particular words were agreed upon by the parties as words to be inserted in the instrument. It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention." [Leitensdorfer v. Delphy, 15 Mo. 161; Williamson v. Brown, 195 Mo. 313, 93 S. W. 791.]

Respondent suggests laches on the part of appellant as a reason why it should be denied relief. But laches was not pleaded, neither was it shown by the evidence.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to enter a judgment for appellant in accordance with the prayer of the petition. All concur.