ELSIE M. HEARD v. VENICE AUDREY O'DELL ET AL., Appellants.—72 S. W. (2d) 491.

Division Two, May 17, 1934.

A. W. Curry, John S. Farrington, A. M. Curtis and Paul W. Barrett for appellants.

*W. I. Mayfield* and *Phil M. Donnelly* for respondent.

WESTHUES, C.—This is a suit in ejectment. The result of the litigation depends upon a construction of the last will and testament of Tom R. Johnson, the father of respondent and appellant Venice Audrey O'Dell. Appellant's husband was also made a party defendant, but has no interest in this case. Appellant and respondent claim title to the land in dispute under the will mentioned. The trial court entered judgment for respondent decreeing her to be the owner of a life estate and entitled to possession of all the land sued for except about five acres. From this judgment appellant duly appealed.

The land is located in Laclede County, Missouri. The will in question contains twelve numbered paragraphs. Only items four, eight and nine are in controversy in this case. A better understanding of the situation will be had if we embody in this opinion the clauses mentioned and also Respondent's Exhibit B, and Appellant's Exhibit 1, being plats of the land affected by this suit.

EXHIBIT B.

Plat of Long Ford Road & Bridge on Osage Fork of Gasconade River.
Also T. R. Johnson estate in Sec. 7—Twp. 33—R. 14.

The clauses of the will in so far as they affect this case read as follows:

"Item 4. I devise and bequeath unto my daughter Venice Audra O'Dell, . . . and the 25 acres described as follows: 25 acres more or less lying in low bottom—*about 20 acres more or less on the North side of the Road, and about five (5) acres more or less on the South side of Road* near Long Ford; being on the Right Bank of River in North West Quarter in Section Five (5). All the above in Township Thirty-Three (33) Range Fourteen (14). To have, hold, use and control as a feme sole during her natural life without any power to sell or mortgage and at her death title to vest in fee simple in her heirs according to laws of descent of Mo. . . ."

"Item 8. I devise and bequeath unto my daughter Elsie May Heard all land I own in Section seven (7) Township Thirty-Three (33) Range Fourteen (14) lying West and South of Public Road except *five (5)* acres more or less in low bottom devised to Venice Audra O'Dell in Item 4 of this instrument. To have, hold, use and control as a feme sole during her natural life without any power to sell or mortgage and at her death title to vest in fee simple in

her heirs according to the laws of descent of Missouri.''

''Item 9. I devise and bequeath unto my son William Elmer Johnson all the land I own in Section Seven (7) Township Thirty-Three (33) Range Fourteen (14) lying north and east of Public Road and on Right Bank of the River except *20* acres more or less in low bottom devised to Venice Audra O''Dell in Item 4 of this instrument. To have, hold, use and control during his natural life without any power to sell or mortgage and at his death title to vest in fee simple in his heirs according to the laws of descent of Missouri.''

We have italicized parts for future reference.

Respondent in her petition alleged that she was the owner of a life estate and entitled to possession of certain land, about twenty acres, which she described by metes and bounds. By referring to the plat we find that this is all of the land in the northwest quarter of section seven, lying west of the road by way of the ford and east and south of the river marked ''Osage Fork.'' It is marked ''Exhibit 3,'' on plat Exhibit B. It will be noticed that there are two roads crossing the river. There is a bridge located on the

east road but not on the west road. The place where the west road crosses the river is known as "Long Ford." The five acres, title to which the court found to be in appellant, were described in the judgment as "the north five acres of the tract of land sued for by plaintiff, said five-acre tract being triangular in shape, west of the public road running generally north and south and south of the road near Long Ford and bordering on the right bank of the Osage Fork of the Gasconade river."

Appellant claims title to all of the land described in respondent's petition by virtue of item four of the will. Respondent claims title through item eight. Item nine was brought into the case because in this item the testator referred to the twenty acres of land, which were devised to appellant in item four, as lying in low bottom. No ambiguity appears upon the face of the will. The section number in item four is erroneous, but that appears from the will itself as in both items eight and nine the section number was referred to as seven and in each of these items item four was mentioned, and the twenty-five acres of land lying in low bottom devised by item four was excepted and referred to as being in section seven. The parties to the litigation have agreed that section number five in item four should be number seven. The description in item four of the twenty-five acres of land lying in low bottom is somewhat uncertain. However, that is certain which can be made certain and if the testator owned about twenty-five acres of land lying in low bottom on the right bank of the river at the ford, known as such, and definitely marked by the topography of the land, then there should be no difficulty in locating the land. Therein rises the dispute. By the overwhelming weight of the evidence the testator owned about twenty-five acres of land lying in low bottom near Long Ford on the right bank of the river well marked by a high embankment so that it could be easily located. However, the description in item four does not correspond with the physical facts. It will be noted that the public road at the ford runs north and south so that there can be no land north or south of this road at the ford. The evidence reveals that about twenty acres of this land lying in low bottom are situated west of the road and on the right bank of the river and about five acres of such land east of the road at the ford. To add to the confusion it will be noted that in item nine the testator devised to William Elmer Johnson all of the land in section seven lying north and east of the road except about twenty acres more or less in low bottom devised to appellant in item four. It is on this side of the road where the evidence in the case places the five acres more or less of low bottom land. In item eight all of the land lying west and south of the road in section seven was devised to respondent except about five acres more or less in low bottom. It is on this side of the road where the evidence places the twenty acres of land lying in low bottom.

, , The result is that although the will itself discloses no ambiguity, its provisions, when taken in connection with the physical facts, cause utter confusion. This creates what is termed in law a latent ambiguity.

(1) The trial court admitted evidence of statements made by the testator expressing his intention of devising to appellant the twenty acres of land lying in low bottom which are here in dispute. The trial court on respondent's motion at the close of the case struck this evidence from the record. Respondent contended that extrinsic evidence is never admissible to prove an intention of a testator not expressed in the will. On this theory the trial court sustained respondent's motion. Respondent's contention was correct. The rule or decision was well stated in McCoy v. Bradbury, 290 Mo. 650, l. c. 657, 658, 235 S. W. 1047, l. c. 1049:

"It is the general rule that, when any doubt or uncertainty arises as to the testator's intention, extrinsic facts are admissible to explain the language of the will, regardless of the nature of the ambiguity, whether it be patent or latent. In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were living. [2 Underhill on Wills, sec. 910; Willard v. Darrah, 168 Mo. 660, 668, 68 S. W. 1023, 90 Am. St. Rep. 468; Cox v. Jones, 229 Mo. 56, 62, 129 S. W. 495.] But such intrinsic evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution. [28 R. C. L., sec. 243.]".

See also 40 Cyc., page 1386 (b) and numerous cases there cited. We will attempt to dispose of this case in accordance with the rule stated.

■ Respondent, to support her claim of ownership, introduced in evidence the will, its probate and Exhibit B. The county surveyor, called as a witness by respondent, testified that he prepared the plat and made a survey of the land as described in item four of the will. This survey of twenty-five acres is represented on the plat Exhibit B and marked thereon as "Ex. 1" and "Ex. 2." It will be noted that there are twenty acres of land within the boundaries of Exhibit 1, and five acres within the boundaries of

Exhibit 2. The surveyor testified that in locating this land he followed the description in the will of twenty acres being north of the road and five acres south of the road. However, the five acres south of the road, as outlined on the plat, are not located in the northwest quarter of section seven as called for in item four of the will. Neither are they near Long Ford or on the right bank of the river. The evidence in the record also reveals that this is high bottom land. So the only description in item four that coincides with this survey is that the five acres are located south of the road. The trial court did not decree this five acres to appellant, but instead a five acre tract of land lying in low bottom west of the road on the right bank of the river near the ford. The trial- court then, by its decree, disregarded the directions mentioned in the will, because under the facts in the case they were inconsistent with the other clauses in the will and inconsistent with the apparent intention of the testator. In doing so the trial court was correct.

The scrivener of the will, a lawyer, was called as a witness for appellant. He testified that the testator sent for him for the purpose of preparing this will. From his evidence it is clear that he, the lawyer, and the testator were unable to agree upon the direction in which the road ran at the ford. Note part of his testimony:

''I asked him on the second or third visit how to describe that twenty-five acres in the low bottom, and he just said, 'It is just simply low bottom along the river,' just the best explanation he could make, the low land along the river. On the second or maybe the third visit or the last visit I made to him, I propounded the questions: 'Suppose you were going from your home to town, on which side of the road would this twenty-five acres of low bottom be?' And he said, 'On both sides.' 'Would it extend up to the river?' And he said, 'It would.' And then I told him, 'Suppose you were going from town and going home and would come to the river and cross it, where would this land be, on both sides of the road?' 'I said, 'If you cross the river, whose land would you come on?' 'My own.' 'Is there where the low bottom was?' And he said it was. And I asked him in that same connection how much was on each side of the road. He didn't know exactly, it might be, the whole tract might be twenty-five to twenty-eight acres, but say twenty-five, and he said, 'I am satisfied there is twenty-five anyhow.' And there was about twenty acres on one side of the road and about six was my recollection, about six on the other. He said that the tracts on both sides of the road were along the river, joining the river, at the Long Ford. It was all up in here (indicating). I made a plat of it. I made several plats and I made a plat somewhere. It is the land that from his description, I took from his description. Defendant's Exhibit One represents the land which Mr. Johnson represented as twenty-five acres more or less in low bottoms at the Long Ford.''

On cross-examination he testified as follows:

"Now, whether he told me the five was on this side and the twenty on this or the twenty on this and the five on this, I am not absolutely sure, but I understood it, especially from that will, was what he had given her was this twenty-five acres, and he described this twenty-five acres on the sides of the road."

On redirect examination he testified as follows:

"The one main thing in the whole thing was to get descriptions that would be intelligible and there would be no dispute among the heirs, and when he said low bottom, to write a deed as low bottom, I had no idea what low bottom was at that time. To use the words 'low bottom,' it seemed to me, for a term in a deed, that it might cause trouble in the future, but I had to do it at last, and I didn't want to do it. On the very first visit I made down there that twenty-five acres in low bottom—there's another reason that hasn't been brought out why I remember that twenty-five acres being the first. Originally, he told me to give his wife a dower in that twenty-five acres low bottom, but he changed his mind and gave her dower in another twenty-five. And I always had some doubt about having that twenty-five where he placed it, but I never had any doubt about where the low bottom was. It was on both sides of the road joining the river at the Long Ford, or the bridge. I took the bridge and the ford as the same."

This witness testified that item four was prepared last and respondent lays much stress upon this fact and argues that the testator intended to give to respondent all of the land lying west and south of the road except five acres; that in item nine twenty acres were excepted; that, therefore, respondent would at least be entitled to all of the land except five acres.

A reading of the will, however, clearly indicates that items eight and nine were prepared to conform to item four. The provisions excepting the five and twenty acres read "more or less lying in low bottom" to correspond to the twenty-five acres more or less mentioned in item four. It also coincides with the instructions given the scrivener by the testator. The testator could neither read nor write, but evidently was a successful farmer and knew his land. Witnesses testified that the testator owned about twenty-five acres of low bottom land as indicated on Defendant's Exhibit 1. The evidence also shows that there exists an embankment of some four to ten feet at the boundary line between the low and high bottom land. This twenty-five acres lying in low bottom fits the description given it in item four if the directions of north and south are disregarded. In other words the testator did own "twenty-five acres more or less lying in low bottom . . . near Long Ford; being on the right bank of the river in the northwest quarter in section five." (Parties agree section number should be seven.) This also corresponds to

the plat marked Defendant's Exhibit 1, which was prepared by the scrivener and which the testator said correctly located the land he wished to devise to appellant in item four. We are also confronted with the difficulty that if the twenty-five acres of land lying in low bottom are to be given to appellant the result will be that about twenty acres of land will be taken from the devise in item eight, where testator excepted only five acres, and it will reduce the exception of twenty acres in item nine to about five acres.

So we are confronted with this situation. In item four the description of the land lying in low bottom as being north and south of the road, the exception of five acres in the devise contained in item eight and of twenty acres in item nine, when applied to the physical situation are diametrically opposed to and inconsistent with the description of twenty-five acres of land more or less lying in low bottom on the right bank of the river near the ford as mentioned in item four. Both descriptions cannot be followed. They cannot be harmonized. One or the other must be disregarded.

In this situation, if we take into consideration the circumstances of the preparation of the will, the fact that there was a confusion as to directions, the uncertainty as testified to by the scrivener as to which side of the road the major portion of the low bottom land was located, the insistence of the testator in describing the land devised by item four as lying in low bottom when the scrivener wanted to use other descriptions, the fact that the land excepted from the devises made in items eight and nine was described as lying in low bottom and the fact that the scrivener in locating the land drew a map of it which coincided with the evidence as to the location of the land lying in low bottom on the right bank of the river near the ford, we are forced to the conclusion that the intention of the testator was to devise to appellant twenty-five acres more or less all of which was land lying in low bottom near Long Ford on the right bank of the river in the northwest quarter of section seven; that he intended to devise to respondent all of the land in said section south and west of the road except that devised to appellant in item four; and to devise the land north and east of the road to William Elmer Johnson with the exception of the land devised to appellant in item four. This intention is clearly expressed in the will itself if we disregard the directions north and south of the road and the inconsistencies created by the confusion as to these directions. In 40 Cyc., page 1416 (c) we read:

"If possible, in accordance with the testator's general intention, the will should be so construed as to harmonize inconsistent and repugnant clauses or provisions and give effect to each of them. But where two clauses are entirely contradictory, that clause should prevail which most nearly appears to be the intention of the testator as gathered from the rest of the will."

In so interpreting the will we have given due regard to the intention of the testator and we have given much weight to the testator's homely description of his land as lying in low bottom, which was uncertain upon the face of the will, but when applied to the topography of the land was certain.

The trial court disregarded in part the description of the land as being north and south of the road and followed the theory that the land devised in item four was near the ford on the right bank of the river. If we are to disregard the direction in the will of locating this land north and south of the road then we should do so *in toto* and disregard the inconsistencies that necessarily follow.

The judgment of the trial court must, therefore, be reversed and the cause remanded to the trial court with directions to enter a decree giving appellant a life estate and the right to possession of so much of twenty-five acres of land more or less lying in the low bottom as is west of the road on the right bank of the river near Long Ford in the northwest quarter of section seven, township 33, range 14. In entering this decree the trial court should follow the description of this land as contained in items four, eight and nine, disregarding the parts italicized in item four, which read: "About twenty acres more or less on the north side of the road," and also disregarding the numbers five acres and twenty acres in items eight and nine. The balance of the land, if any, sued for in this case should go to respondent. The court should in its decree describe this land by metes and bounds so as to exclude all uncertainty. In ascertaining this line we are not directing but merely suggesting to the trial court that if it finds it necessary to follow the procedure outlined in the case of Hecker v. Bleish, 319 Mo. 149, l. c. 177, and 178, 3 S. W. (2d) 1008, l. c. 1020, 1021, it will be found that this court in that case directed the trial court with the aid of a surveyor or further testimony to establish a division line as outlined in the opinion without a retrial of the case. Or the court may adopt a procedure similar to that followed by the trial court in the case of Point Prairie Hunting & Fishing Club v. Schmidt, 44 S. W. (2d) 73, l. c. 76 (2). We do not see any necessity to retry this case and if the procedure is followed as prescribed in either of the above cases we think the trial court can properly enter a decree in conformity with this opinion. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Leedy* and *Tipton, JJ.,* concur; *Ellison, P. J.,* absent.