(No. 35056.—▮▮▮▮▮▮▮
· URBAN A. JACOBI *et al.,* Appellees, *vs.* IRA WALTON MANTLE *et al.,* Appellants.

*Opinion filed January 23, 1959—Rehearing denied March 18, 1959.*

FARTHING AND FARTHING, of Belleville, for appellants.

TURNER, HOLDER & ACKERMANN, of Belleville, for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Defendants have appealed from a decree of the circuit court of St. Clair County declaring a public roadway across the farms of both parties; granting plaintiffs a private right of way across lands of defendants; voiding for lack of consideration the permit to use the private roadway executed by defendants in favor of the plaintiff Urban A. Jacobi; quieting plaintiffs' title to an abandoned railroad right of way; and awarding damages and incidental relief to the plaintiffs. A freehold being involved the appeal comes to this court.

Plaintiffs and defendants are neighbors owning adjoining farms in Caseyville Township in St. Clair County. Defendants' farm consists of 29.5 acres in the east part of the southeast quarter of section 23, an adjoining 33.23 acres in the northwest part of the southwest quarter of section 24, (which is practically two tracts since the mine property, except for a narrow area near the west line of the quarter, is carved out of it), a 9.8-acre mine tract which was formerly the site of a coal mine, and a 2-acre tract, both of which are almost entirely covered with deposits of mine slag.

Plaintiffs own the 27 acres lying north of the easterly portion of the mine site and east of the north part of defendants' 33.23-acre tract, the remainder of the fractional

part of the southwest quarter of section 24, the major portion lying south and east of defendants' farm, and, except for two small tracts, all of the northwest quarter of section 25 lying north of the Baltimore & Ohio Southwestern railroad.

Ogle's Creek, a stream about 10 to 12 feet wide, runs from the defendants' land in section 23 in a northeasterly direction, and continues in a more or less easterly direction to form the boundary line between defendants' 33.23-acre tract on the north and land of plaintiffs on the south, and thus cuts across the south 30 feet or so of defendants' 9.8-acre tract.

In 1898, the former owner of all the lands involved herein, deeded a 30-foot strip for a railroad right of way to the railroad company. This right of way began at the crossing near Carbon, ran north and west across the northwest quarter of section 25 and the southwest quarter of section 24, and ended at the coal mine on the 9.8-acre tract now owned by defendants. The deed to the railroad right of way provided it should revert to the grantor or his assigns and it was not disputed that the right of way was abandoned in 1939.

Defendants' 29.5 and 33.23-acre tracts were formerly owned by William Bevirt, father of Mrs. Mantle. They farmed this land since 1926, making their home on the 29.5-acre tract and later acquiring title in 1931. During this time, as did their predecessors before them, they used the roadway running west from their 29.5-acre tract across the mine property and then south alongside the railroad right of way to the village of Carbon. On June 5, 1953, defendants acquired the 9.8 acres comprising the coal mine property, and the 2-acre tract adjoining it on the north and east, from the Perry Coal Company. In December, 1953, they also acquired a deed from the Perry Coal Company to the 30-foot railroad right of way and a small .84-acre tract, the site of an abandoned airshaft, near the Baltimore

& Ohio Southwestern railroad crossing near Carbon. After they acquired the 9.8-acre coal mine tract, they placed logs and brush across the entrance to a roadway that had been used by plaintiff to get to plaintiffs' north 27 acres, thereby forcing them to follow another route. This roadway to the north 27 acres begins at the place in the 9.8-acre tract where the public road turns west and proceeds in a northeasterly direction to the north limits of defendants' 2-acre tract.

In August 1953, defendants, without consideration, gave the plaintiff Urban Jacobi a written permit to use the private roadway but cancelled the permit by written notice some few months later. Previously, defendants had placed a gate and "no trespassing" signs across the public road just south of the Ogle's Creek bridge, compelling plaintiffs to construct a ford across Ogle's Creek to the east of the mine property in order to get to their north 27 acres. This ford was used by plaintiffs until it became unusable following heavy rains in 1957. The difficulties between these two neighbors resulted in the lawsuit from which this appeal is taken.

Plaintiffs' complaint is drawn in three counts. Count I, charging defendants with cultivating parts of plaintiffs' land, was abandoned during the trial for lack of proof and requires no further consideration. Count II alleges that defendants wrongfully claimed the abandoned railroad right of way by virtue of the deed from the Perry Coal Company and prays that this deed be declared void and removed as a cloud on plaintiffs' title. Count III describes the road leading from Carbon north and west across plaintiffs' farm, over the bridge across Ogle's Creek and from there north and west to the west side of defendants' 9.8-acre tract. It alleges that plaintiffs and their predecessors in title used a private roadway across the mine site to reach their north 27 acres; that defendants prevented plaintiffs' use of this private road; that the written permit from defendants to Urban Jacobi allowing him the right to use the road was void for lack of consideration and was cancelled by the de-

fendants; that plaintiffs had to provide for a survey of the respective properties; that defendants were wrongfully using the public road running south across plaintiffs' farm to the village of Carbon; that plaintiffs were compelled to construct a ford across Ogle's Creek and because of heavy rains plaintiffs were not able to get to their north 27 acres. Count III asks that the permit and cancellation notice be declared void; that plaintiffs be permitted the use of the roadway crossing Ogle's Creek and leading to their north 27 acres; and that defendants be restrained from using the public road across plaintiff's farm.

By amendment, plaintiffs added a fourth count to their complaint alleging the existence of the private road leading to their north 27 acres for more than 40 years, that plaintiffs had adverse possession thereof, that by denying plaintiffs the use of the bridge and the private road they were landlocked from reaching their north 27 acres except by the ford they built across Ogle's Creek, and that heavy rains had made the creek impassable. They asked for damages in the sum of $10,000.

Defendants denied all charges made against them and by way of affirmative defense alleged that they had an easement by necessity over the public road leading south to Carbon. They further alleged ownership of the .84-acre tract in section 25 and their use of a public road leading thereto and that plaintiffs unlawfully cultivated a 12-foot strip north of this road. They asked that plaintiffs be restrained from interfering with their use of both roadways and from crossing their lands to plaintiffs' north 27 acres. By an additional counterclaim, defendants charged that plaintiffs obstructed Ogle's Creek downstream from the bridge and that on June 13 and 14, 1957, water was caused to back up and damage the bridge. They asked for damages in the amount of $10,000.

Defendants denied the charges in the counterclaim and averred that they maintained the bridge jointly and that

damages to the bridge were caused by unprecedented rainfall occurring on June 13 and 14.

Defendants do not question that part of the decree finding that the road leading from Carbon over plaintiffs' farm to the west side of defendants' 9.8-acre tract, including the bridge over Ogle's Creek, is a public road available to both plaintiffs and defendants alike, nor that part of the decree quieting plaintiffs' title to the abandoned railroad right of way. Their principal contention in substance is that plaintiffs did not prove their right to the private roadway leading to the north 27 acres, either by adverse possession or by necessity. They argue that the public road traverses plaintiffs' farm and that plaintiffs can reach their north 27 acres by turning to the east from the public road at a place on their own land south of Ogle's Creek bridge and by fording or building their own bridge across Ogle's Creek.

This contention places defendants in a rather unique position. They, in effect, ask the court to allow them the use of approximately one half mile of roadway running northwesterly across plaintiffs' farm but want to deny to plaintiffs the use of that portion of the same roadway crossing and leading north from Ogle's Creek bridge and the private roadway leading from the turn in the public road north to plaintiffs' 27 acres. On the one hand, they ask for equitable relief, and on the other ask that similar benefits be denied to plaintiffs, quite contrary to the ancient maxim that he who seeks equity must do equity. *Springfield and Northeastern Traction Co.* v. *Warrick,* 249 Ill. 470.

The record does not disclose the origin of the private roadway leading to plaintiffs' north 27 acres but all the witnesses, including those for the defendants, testified to the use of a right of way across the mine property, beginning with Jack Middleton who rented land from the former owner, Joe Taylor, in 1914, and continuing through the successive tenants who farmed the land, including Ralph Hesse who farmed it as late as February, 1956. It would

serve no useful purpose to catalog the testimony of the several witnesses on this point. We feel their testimony is sufficient to sustain the finding of the trial court that the plaintiffs and their predecessors in title have, for a period of more than 20 years, openly, adversely and notoriously used the roadway leading to the north 27 acres with sufficient frequency to raise the presumption of a grant or to establish a way by prescription. *Stevenson* v. *Meyer,* 10 Ill.2d 335.

Defendants contend, however, that such presumption is rebutted by evidence showing that plaintiffs' initial use of the way was permissive. We cannot agree that the evidence bears this out. William Bolt, an official of the Perry Coal Company, stated that anyone who wanted to cross the mine property applied to him for permission but the only person shown to have specifically asked for his permission was Edward Gross who rented the Tiedemann farm prior to its acquisition by plaintiffs, and there is no showing of there having been an absolute prohibition against the use of the road by the coal company. Also, Bolt admitted that Gross may have crossed at other times without his permission, that Tiedemann had not asked his permission, that permission had never been refused, and that other tenants had crossed the mine property before and after Gross. Nor do we find the written permit from defendants to Urban Jacobi to be conclusive on this point. Consideration of the difficulties experienced between Jacobi and Mantle concerning the use of the road tends to establish that Jacobi was trying to buy his peace as much as it indicates that the initial use of the road was permissive, especially in view of the evidence that the roadway was used for a period of some 40 years prior to the execution of the permit.

In addition, we feel the evidence supports the finding that plaintiffs are entitled to the use of this private road as a matter of necessity. The facts in this case compare favorably with the facts in *Hoepker* v. *Hoepker,* 309 Ill. 407, in which this court held: "* * * where the owner of an

entire estate has so arranged and adapted it that one portion of the estate derives a benefit and advantage from the other portion, of a permanent, open and visible character, and such owner sells a portion of the property, the purchaser will take the tenement sold him with all the benefits and burdens which appear at the time to belong to it, and it is not necessary in such case that the easement claimed by the purchaser must be really necessary for the enjoyment of the estate granted him but it is sufficient if it is highly convenient and beneficial therefor."

In the present case, both parties admit acquisition of their respective farms from a common source of title. At the time they acquired their property it was apparent to both that each of the farms was encumbered by easements in use for many years. Plaintiffs knew there was a public road leading from defendants' farm south to the village of Carbon. This was admitted. Likewise, defendants knew of the use of the roadway across the mine site to the north 27-acre tract. It would be just as inequitable to require the plaintiffs to find another roadway across Ogle's Creek and around the east side of the mine property as it would be to require defendants to find another road south to the village of Carbon, a consideration we find did not escape the trial judge.

Under the circumstances, we are not disposed to disturb the findings of the trial judge who saw and heard the witnesses and was in better position to determine the weight to be given to the evidence. *Deisenroth* v. *Dodge,* 7 Ill. 2d 340; *Wiley* v. *Lamprecht,* 400 Ill. 587; *Gilbert* v. *Chicago Title and Trust Co.,* 7 Ill. 2d 496.

Defendants next contend that the complaint, the evidence and the decree fail to properly limit or describe the private roadway running across defendants' 9.8-acre and 2-acre tracts. They argue that an easement must be confined to a specific way and within definite boundaries. This is the rule (*Gentleman* v. *Soule,* 32 Ill. 271) but we do not find

the rule violated in this instance. The decree describes and grants to the plaintiffs the use of a private roadway beginning at the point where the public road crosses the most southerly line of defendants' 9.8-acre tract. It continues over the bridge and along the public road north approximately 385 feet to the place where the public road turns abruptly to the west. It then continues north 57 feet, turns to the northeast for 113 feet, then turns north again and runs along the west line of defendants' 2-acre tract a distance of 128 feet until it reaches plaintiffs' north 27 acres. The decree provides that the road shall be of sufficient width to accommodate farm machinery and equipment. Farm machinery is sufficiently standardized that defendants need not fear that the road is not confined with definite boundaries. We find compliance with the rule that easements must be confined to a specific line or way. *Dymeak* v. *Christjensen*, 279 Ill. 242; *Thorworth* v. *Scheets*, 269 Ill. 573; *Gentleman* v. *Soule*, 32 Ill. 271.

Defendants next contend that the trial court erred in sustaining objections to their offer to prove damages to the bridge. They alleged in their counterclaim that the plaintiffs deposited brush and trees in the stream and when heavy rains occurred on June 13 and 14, 1957, the water backed up thereby damaging the bridge. In the first place, the record does not sustain the charge that plaintiffs obstructed the flow of water through the creek. Secondly, the defendants admit that an unprecedented rainfall did occur about June 14, 1957, a fact the court properly took judicial notice of (*Elser* v. *Village of Gross Point*, 223 Ill. 230, at 241), which was, in our opinion, a proper ruling against defendants' charge that the damages were caused by acts of the plaintiffs. We find no error here.

Defendants next contend that it was error for the trial judge to view the premises. They argue that he relied upon his view in utter disregard of the evidence. We have found ample evidence in the record to sustain his findings and de-

cree. The trial judge announced his plan to view the premises at the close of the evidence and neither party objected. Whereupon, defendants filed a motion to find the issues in their favor but did not assign as error therein the judge's statement of intention to view the premises. The first objection thereto is found in their motion to vacate the decree and for a new trial. Under such circumstances we find no prejudicial error in his so doing. Cf. *Wise* v. *Potomac Nat. Bank,* 393 Ill. 357.

Our conclusions concerning the sufficiency of the evidence supporting the findings of the trial court apply as well to defendants' final argument that there was no evidence supporting the damages awarded to the plaintiffs, and no further consideration is given thereto. Defendants having failed to show prejudicial error in this record, the decree of the circuit court is affirmed.

*Decree affirmed.*