Chester ALLEN and Blanche Allen,
Plaintiffs-Respondents,

v.

O. L. SMITH and Hattie Smith,
Defendants-Appellants.

No. 8201.

Springfield Court of Appeals.

Missouri.

Feb. 24, 1964.

Powell, Jones & Ringer, Dexter, for defendants-appellants.

John A. Casey, Poplar Bluff, for plaintiffs-respondents.

STONE, Judge.

This is an appeal by defendants from the judgment in Case No. 15,620 (in the Circuit Court of Butler County) reforming the judgment theretofore entered in Case No. 14,851 (in the same court), which had established, pursuant to a written stipulation of the parties, a permanent easement for a private road over and across defendants' land.

Defendants' farm of more than 800 acres is about 12½ miles northwest of Poplar Bluff and lies on both sides of U. S. Highway 60, which runs generally east and west through the farm. Plaintiffs' tract of approximately 63 acres lies south of Highway 60, separated from the highway and almost enclosed (i. e., bounded on the west, north and east, and on half of the south side) by defendants' land. Prior to 1953, plaintiffs reached their tract from the north over a road identified in the record as, and hereinafter called, "the old log road." Plaintiff Chester Allen said that he had traveled the old log road "ever since I can remember" and "I can remember it in '22." About 1953, and thus about the time Highway 60 was relocated and constructed along its present route, defendants so fenced their land that thereafter plaintiffs could not use the old log road and were excluded from their tract until judgment was entered in Case No. 14,851 on September 27, 1960. Plaintiffs resided on a farm about one mile distant and, during a major part of the period from 1953 to 1960, "were gone" (apparently from the neighborhood) so, after they were fenced out, they made no serious attempt to reach their tract until they instituted Case No. 14,851 against defendants.

The pleadings in Case No. 14,851 are not before us; but, whatever may have been the precise issues joined thereby, the parties by their respective counsel of record executed a written "stipulation for judgment" which included the form of judgment thereafter approved and entered of record by and in the circuit court. In that judgment, the court found (a) that plaintiffs were the owners of the 63-acre tract therein described, (b) that "there [was] no public road passing through or alongside said property owned by plaintiffs," (c) that defendants owned the land lying between plaintiffs' tract and Highway 60, (d) that "plaintiffs [needed] a means of ingress and egress," and (e) that "same should be established across" defendants' land (described in the stipulation) upon "certain conditions," to wit, (1) that plaintiffs should pay $250 to defendants and the court costs, and (2) that two cattle guards, "one at the highway entrance to said easement and the other at the point where said easement" joined plaintiffs' tract, should be constructed by plaintiffs and thereafter maintained by them and their successors in title. Upon those findings, it was adjudged that defendants have judgment against plaintiffs for $250 and costs and "that plaintiffs shall have a permanent easement to run with their land as described in this judgment over and across the lands of the defendants as described in this judgment and in particular, *over and across a strip of land thirty feet wide lying immediately west of and adjacent to a line beginning at a point sixty feet south of the northwest corner of [plaintiffs' 63-acre tract] and running*

*thence north along and with the west line of the east half of the southwest quarter of said Section 5 to the southerly right of way line of U. S. Highway 60 (as it now is) to termination,* provided that at all times" the two cattle guards should be maintained at the locations aforesaid. (All emphasis herein is ours.)

Thus, the permanent easement was imposed upon a strip (hereinafter referred to as the 30-foot easement strip), which was 30 feet in width, east and west, and ran north and south "immediately west of and adjacent to" a north-and-south quarter-section line from the northwest corner of plaintiffs' 63-acre tract to Highway 60, a distance not stated in the judgment but shown on a plat in evidence in this case as approximately 600 feet. Plaintiffs insisted that, when they read the stipulation for judgment in Case No. 14,851, they understood that it described the course of the old log road and that they were to use that road between their tract and the highway.

The *east-and-west* boundary line between defendants' land on the north and plaintiffs' tract on the south had been run and thus the northwest corner of plaintiffs' tract had been established by the county surveyor (employed by defendants) in 1958, but the *north-and-south* quarter-section line, "immediately west of and adjacent to" which the 30-foot easement strip lay, had *not* been run prior to entry of judgment in Case No. 14,851 on September 27, 1960. So, when the parties stipulated and judgment was entered in Case No. 14,851, none of them *knew definitely* where the *north-and-south* quarter-section line crossed Highway 60 or whether a vehicular entrance built on the south side of Highway 60 at the time of its relocation and construction was within the 30-foot easement strip described in the judgment.

Upon entry of judgment in Case No. 14,-851, plaintiffs began to travel across defendants' land using (so they said upon trial of this case) the old log road which was "well-defined" and ran between two old

fence rows "straight north" from the northwest corner of plaintiffs' tract to a point some 50 to 60 feet south of the highway right of way where it veered slightly to the east and ran to the highway entrance. Upon trial, plaintiffs conceded that the old log road "wasn't perfectly straight" and that it curved at the north end, but they insisted that, prior to August 1961 when John H. Greason, the county surveyor (then employed by defendants), had run the *north-and-south* quarter-section line, they had thought that the old log road, for the entire distance from their tract to the highway, was within the 30-foot easement strip.

In August 1961, Greason ran the *north-and-south* quarter-section line and then found that the road being used by plaintiffs (he shied from referring to it as "the old log road") was *west* of the quarter-section line (and thus *within* the 30-foot easement strip) until "it approached Highway 60" where it veered to the *east* of the quarter-section line (and thus *without* the 30-foot easement strip) as it ran to the highway entrance. Greason fixed the *middle* of the highway entrance as 36 feet east of the quarter-section line; and, although he did not give the width of the entrance, he said that no part of it was west of the quarter-section line. Emboldened by this survey, defendants fenced and closed the entrance on August 28, 1961. This suit followed on September 19, 1961.

Plaintiffs' second amended petition, upon which the case at bar was tried, alleged in substance that, when the stipulation for judgment in Case No. 14,851 was executed, it was the agreement of all parties that the stipulation described the old log road over which plaintiffs were to have an easement, but that, when defendants subsequently procured a survey of the 30-foot easement strip, it was found "that the judgment entered did not describe the road location as agreed upon by the parties." Plaintiffs prayed for reformation of the judgment in Case No. 14,851 so that the easement would "follow the course of the old log road" and would "be in the location agreed upon

by plaintiffs and defendants," and for a permanent injunction restraining defendants from interfering with plaintiffs' use and enjoyment of the easement (as reformed) over the old log road. Defendants' answer admitted execution of the stipulation and entry of judgment pursuant thereto, averred that they had not interfered with or objected to plaintiffs' use of the 30-foot easement strip, and denied the other allegations in the petition.

Following trial on the merits, the court entered its judgment and decree in this case (No. 15,620) finding "that the description * * * in the stipulation for judgment in Case No. 14,851 was erroneous and that it was the intention of both parties that said stipulation for judgment should permit plaintiffs the use of the so-called old log road * * * and *that said old log road is the well-defined road running over and across defendants' land and connecting to the highway approach for Highway No. 60*," and "that the written stipulation for judgment as entered into in Case No. 14,851 did not express the intentions of plaintiffs or defendants." Upon those findings, the court decree "that the stipulation for judgment and judgment entered in accordance therewith in Case No. 14,851 as said judgment pertains to the location of the road which plaintiffs were to receive the use of over and across defendants' property, should be amended and reformed so as to read * * * that said *location of said road shall be and follow the course of the old log road running over and across [defendants']* premises in the approximate *vicinity of the west line of the East Half (E½) of the Southwest Quarter (SW¼) of Section Five (5), Township Twenty-five (25) North, Range Five (5) East, in Butler County, Missouri, connecting on the south end to the land of plaintiff[s] and connecting on the north end to the highway approach as now located to U. S. Highway No. 60*." The decree also enjoined defendants "from interfering with plaintiffs' use of the aforesaid described road" and taxed the costs against defendants.

Our first responsibility is to consider and determine our appellate jurisdiction regardless of whether it has been challenged. Domyan v. Dornin, Mo.App., 348 S.W.2d 360, 361; Hammonds v. Hammonds, Mo.App., 289 S.W.2d 903, 904(1), and cases there cited. Since an easement is an "interest" in land and involves the title [Dalton v. Johnson, Mo.App., 319 S.W.2d 66, 67(1), and authorities there cited], and since our Supreme Court is given "exclusive appellate jurisdiction in all cases involving * * * the title to real estate" [Art. V, Sec. 3, Const. of Mo., 2 V.A.M.S.], the situation presented on this appeal casts a heavy jurisdictional shadow. There is no doubt but that an appeal in an action to *establish* an easement [Rosenbloom v. Grossman, Mo., 351 S.W.2d 735, 736(1); Missouri State Oil Co. v. Fuse, 360 Mo. 1022, 232 S.W.2d 501, 503(1); Mueller v. Larison, Mo.App., 347 S.W.2d 446] or in an action to *set aside* an easement [Peters v. Platte Pipe Line Co., Mo., 305 S.W.2d 413, 414(1); Robb v. N. W. Electric Power Coop., Mo., 297 S.W.2d 385, 386(1) ] must go to our Supreme Court. And *if* the judgment in Case No. 15,620, from which defendants here appeal, had *vacated* the prior judgment in Case No. 14,851, certainly we would have had no jurisdiction. Juede v. Sims, 147 Mo.App. 65, 126 S.W. 251; id., 258 Mo. 26, 166 S.W. 1048. But, as counsel point out, defendants admit that plaintiffs have an easement (as adjudged in Case No. 14,851) so there is no "controversy involving the title to an easement" [Billings v. Paine, Mo., 319 S.W.2d 653, 657], and the only dispute is as to the *location* of the easement. Entertaining the uncertain view that, in these circumstances, the present-day current of authoritative judicial opinion would lodge this appeal with us, we retain jurisdiction. Cf. City of Marshfield v. Haggard, Mo., 300 S.W.2d 419; Ashauer v. Peer, 346 Mo. 218, 139 S.W.2d 991.

It is apparent that in the instant case the court decreed reformation of the prior judgment in Case No. 14,851 on the ground of mutual mistake of the parties in

describing, in the stipulation upon which judgment was entered, the route over which plaintiffs were to have an easement. "Fraud, accident, and mistake are three great heads of equity jurisprudence * * *" [National Surety Co. v. State Bank of Humboldt, 8 Cir., 120 F. 593, 597, 61 L.R.A. 394; Chouteau v. City of St. Louis, Mo.App., 131 S.W.2d 902, 904]; and it is a familiar principle that upon timely application equity will relieve against a judgment for extrinsic fraud, accident or excusable mistake.[1] We already have noted *plaintiffs'* testimony that, when they agreed to the stipulation in Case No. 14,851, they understood that it described the course of the old log road and that they were to have the use of that road across defendants' land. But the general rule is that equity usually will entertain a bill to reform a contract (or, as here, a stipulation and a judgment entered pursuant thereto) only if the mistake is mutual, i. e., if the contract (or stipulation) has been written "in terms which violate the understanding of both parties" [Wilhite v. Wilhite, 284 Mo. 387, 393–394, 224 S.W. 448, 449(2); Baumhoff v. Lochhaas, Mo., 253 S.W. 762, 764(1)] or, otherwise put, if it appears "that both [parties] have done what neither intended." Walters v. Tucker, Mo., 308 S.W.2d 673, 675; State ex rel. State Highway Com'n v. Schwabe, Mo., 335 S.W.2d 15, 19; Allan v. Allan, Mo., 364 S.W.2d 578, 581. And *defendants'* counsel insist that, regardless of whether *plaintiffs* might have been mistaken in their understanding of the course described in the stipulation and incorporated in the judgment in Case No. 14,851, there was no evidence that *defendants* labored under any such mistaken understanding.

Turning again to the record, we find this relevant evidence. John A. Casey, plaintiffs' attorney in Case No. 14,851 (and also

in this one), testified that he had numerous settlement conferences with Mr. H.———, defendants' attorney in Case No. 14,851 (but not in this one); that, "in those negotiations, * * * there was no dispute concerning the location of the road"—"it was agreeable to Mr. H——— and myself that the road be located upon the same land as the old log road we both knew—"; that "there was never any dissension" about location of the private road along the course of the old log road; that all of the difficulty "was over the amount of money" to be paid to defendants; and that the stipulation for judgment was prepared by Mr. H———. Witness Casey's statements stand undisputed, for Mr. H——— was not called as a witness.

Certain portions of the testimony of defendant O. L. Smith are significant and revealing. In the course of his direct examination, Smith said that "my attorney told me" that, in negotiations for settlement of Case No. 14,851, plaintiffs at first wanted the easement strip "to straddle" the north-and-south quarter-section line (i. e., with 15 feet on each side of the line) but *"I wanted the road on the west of that line so it would hit the old road."* Again, Smith stated that "I didn't want to straddle the [north-and-south quarter-section] line because when you put a road where your corners is [sic], you soon lose the corners and don't know where they are, and *putting it west of that line, put it in the old road."* When asked on cross-examination whether "you knew that if he [plaintiff Chester] was using that [old] road, he'd have to use that approach [the existing entrance] to get out" on the highway, Smith quickly agreed, "yes, sir."

Prior to defendant O. L. Smith's testimony, it already had been shown by other witnesses that, to permit vehicular travel

to and from Highway 60 over the north end of the 30-foot easement strip, plaintiffs would be required to fill a "ravine" some 15 to 20 feet deep (just south of the highway) and to build another highway entrance (if appropriate governmental permission therefor could be obtained), all at a cost which a contractor consulted by plaintiffs estimated at $450 and which Smith conceded would be "a right smart" although he thought "it wouldn't cost me that much." With this evidence in the record, Smith was asked on cross-examination whether it was his "intention," when the stipulation for judgment in Case No. 14,851 was executed, to force plaintiffs to make another fill and build their own highway entrance. His illuminating reply was: *"Well, when he* [plaintiff Chester] *wanted to straddle that* [north-and-south quarter-section] *line, I thought that he'd probably get the whole* [existing] *approach. * * * I thought if he went west* [of the quarter-section line], *we'd both get it.* That's the way I kind of had it figured. I hadn't checked it; I didn't know." Before Smith left the witness stand, the court recalled the testimony "that you [Smith] honestly thought" when the stipulation in Case No. 14,851 was executed "that he'd get about half of the [existing] approach and you'd get about half of it," and again elicited the response that *"I* [Smith] *thought maybe he'd get half of it."*

We are not unmindful of other testimony by Smith not consistent with the foregoing, of which the following statements are typical, to wit, that, if he had testified "earlier" that he wanted to impose the easement on the old log road, "I got it a little wrong some way"—"if that is the way I testified, I am mistaken," that the old log road never curved to the east and ran to the point where the highway entrance was built, and that, although "I [Smith] was just guessing and he [plaintiff Chester] was guessing too" since the north-and-south quarter-section line had not been surveyed, "my intention was for him to take the judgment just like I am taking it—where the judgment called for." Smith heartily approved of the language in which plaintiffs' counsel finally summed up Smith's settlement philosophy, i. e., "if it [the road over the 30-foot easement strip] came out to the approach, he [plaintiff Chester] could use the [highway] approach; if it came out 10 feet on the other side, he'd have to build his own approach."

■■ However, the inconsistencies and conflicts in the oral testimony were for the trial chancellor. Ethridge v. Perryman, Mo., 363 S.W.2d 696, 701(5). For, although we try a suit in equity de novo and reach our own conclusions as to the weight of the evidence [Hampton v. Niehaus, Mo., 329 S.W.2d 794, 800(6); Trotter v. Trotter, Mo., 316 S.W.2d 482, 484(2); Masterson v. Plummer, Mo.App., 343 S.W.2d 352, 354 (1) ], we should and do accord appropriate respect to the plain admonition [V.A.M.R. Rule 73.01(d); V.A.M.S. § 510.310(4) ] that due regard should be given to the superior opportunity of the trial chancellor to judge of "the credibility and characteristics of the witnesses who testified before him." Peine v. Sater, Mo., 289 S.W.2d 101, 102(1); Cull v. Pfeifer, Mo., 307 S.W.2d 424, 428 (5); Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771(3).

■ Numerous cases announce and apply the settled doctrine that, to establish a mutual mistake in an instrument, it is not necessary to show that the parties theretofore had agreed upon any particular words or language to be used in the instrument, but it is sufficient to show that they agreed to accomplish a particular object by the instrument to be executed and that such instrument, as executed, is insufficient to effectuate their intention. General Refractories Co. v. Howard, 328 Mo. 1139, 44 S.W. 2d 65, 66(2); Wolz v. Venard, 253 Mo. 67, 82, 161 S.W. 760, 764; Williamson v. Brown, 195 Mo. 313, 332, 93 S.W. 791, 796; Snider v. Miller, Mo.App., 352 S.W.2d 161, 165(8); Bryan v. Medical West Bldg. Corp., Mo.App., 345 S.W.2d 389, 396. True, the burden rests upon one seeking reformation to establish his case by clear, cogent and

convincing evidence. City of Warsaw v. Swearngin, Mo., 295 S.W.2d 174, 181(7); City of New York Ins. Co. v. Stephens, Mo., 248 S.W.2d 648, 651(2); Bryan, supra, 345 S.W.2d loc. cit. 395(1). But, without indulging in further factual detail, we think the foregoing sufficient to demonstrate that, if plaintiffs' evidence and certain portions of the testimony of defendant O. L. Smith be accepted here (as they were by the trial chancellor), the proof of mutual mistake in the stipulation and judgment in Case No. 14,851 was clear, cogent and convincing. Leimkuehler v. Shoemaker, Mo., 329 S.W. 2d 726, 731(5).

■ In court-tried cases, we are under the broad general injunction that the judgment nisi should not be set aside unless clearly erroneous [V.A.M.R. Rule 73.01(d); V.A.M.S. § 510.310(4); Southern Reynolds Co. School Dist. R–2 v. Callahan, Mo., 313 S.W.2d 35, 38(3); Erickson v. Greub, Mo., 287 S.W.2d 873, 874(1) ]; and, as the courts have put it in other suits for reformation, the chancellor's finding "will be sustained unless the proof is palpably insufficient in clarity and cogency to warrant the finding made by him." City of Warsaw, supra, 295 S.W.2d loc. cit. 182(9); Ethridge, supra, 363 S.W.2d loc. cit. 698(3); Snider, supra, 352 S.W.2d loc. cit. 162(2). See also Cossairt v. Reich, Mo., 370 S.W.2d 291, 294(2). In recognition of the foregoing principles, it necessarily follows that we should affirm the finding of the trial chancellor in the instant case on the basic issue of mutual mistake.

■ In reaching this conclusion, we have not overlooked defendants' contentions (a) that "oral testimony was not admissible to vary or impeach the written stipulation" and (b) that plaintiffs were not entitled to reformation because they were negligent in failing to have the 30-foot easement strip surveyed before entering into the stipulation. Both contentions are without merit. The oral testimony was admissible to show the true intention of the parties and thus the mutual mistake in the stipulation and

in the judgment. State ex rel. State Highway Com'n v. Schwabe, supra, 335 S.W.2d loc. cit. 19(5); Walters, supra, 308 S.W.2d loc. cit. 675(1); Miller v. Haberman, 359 Mo. 1012, 224 S.W.2d 1002, 1005(2); McCormick v. Edwards, 351 Mo. 1017, 174 S. W.2d 826, 829. And, in the particular circumstances here presented, plaintiffs were not guilty of such negligence as to preclude the equitable relief of reformation. Overton v. Overton, 327 Mo. 530, 542, 37 S.W. 2d 565, 568; McCormick, supra, 351 Mo. loc. cit. 1023, 174 S.W.2d loc. cit. 829(5); Leimkuehler, supra, 329 S.W.2d loc. cit. 731 (8).

■ Defendants also present assorted complaints against the judgment itself. One is that "the reformed judgment fails to permit the defendants to construct any gates across the approach or at any other place across the easement * * * or require the plaintiffs to keep such gates as defendant might construct closed." Defendants' professed concern about gates is of recent origin and comes too late. Gates were not mentioned in the stipulation for judgment in Case No. 14,851, which was negotiated and prepared by defendants' then counsel, and which provided *only* for "two cattle guards adequate to turn cattle, one at the highway entrance to said easement and the other at the point where said easement joins the land belonging to the plaintiffs." Upon trial of this case, defendant O. L. Smith admitted that, after entry of judgment in Case No. 14,851, he had objected to installation of a cattle guard at the highway entrance—"I can't run cattle over a cattle guard; we are in the cattle business," but there still was no mention of gates and no request for permission to maintain gates across the easement strip. In fact, upon trial of the instant case reformation of the judgment in Case No. 14,851 was at issue *in one respect only,* to wit, as to the *description* of the easement strip. Aside from all of this, defendants are in no position to press here the quoted complaint about gates, for no such allegation of error was presented to the trial court in de-

fendants' motion for new trial in this case. V.A.M.R. Rule 79.03; V.A.M.S. § 512.160 (1); Grapette Company v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, 36–37 (2, 3); Gosnell v. Gosnell, Mo.App., 329 S.W.2d 230, 234(5, 6); Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609(10, 11).

■■■ Another complaint is that the judgment in this case "is broader than the pleadings * * * in that it establishes an easement connected with the approach [entrance] to Highway 60, whereas the petition seeks only to have the easement established along the 'old log road' and there was no substantial evidence that the 'old log road' connected with the approach." However, the record demonstrates (and, for that matter, defendants' brief elsewhere recognizes) that plaintiff Chester, who had known the old log road since 1922, testified positively that it ran to the highway entrance— in other words, that the highway entrance had been built in the route or course of the old log road. It is true that, as defendants' counsel emphasize, plaintiff Chester conceded that, *at the time of trial,* there was no "evidence" or "sign" of the old log road for a distance of about 50 feet south of the highway. But this was not inconsistent with or destructive of the noted testimony that the highway entrance had been built in the route or course of the old log road, for, as defendant O. L. Smith pointed out, "any evidence of an old log road across Highway 60 has been obliterated by construction of Highway 60," and, as plaintiff Chester stated *without contradiction,* defendant O. L. Smith also had used a bulldozer south of ·the entrance. That physical indicia of the course of the old log road just south of the entrance might

have been obliterated by grading or bulldozing operations should not work any benefit to defendants or any detriment to plaintiffs. Cf. Hanley v. Stulman, 212 Md. 273, 129 A.2d 132, 136(4). We cannot say that there was "no substantial evidence" that the old log road connected with the highway entrance, and the objection under discussion is disallowed.

■■■ The final assault upon the judgment is that it "fails to locate or describe the easement" in that "the description of the easement as the 'old log road' is not a definite description" and the judgment "does not set out the width of the easement." It is always well to heed the broad admonition that "decrees affecting title to real estate should describe the land in question with certainty" [Williams v. Pemiscot County, 345 Mo. 415, 419, 133 S.W.2d 417, 419(6), a suit to try and determine title]; and it may be stated as a general rule that, in a suit to establish or protect privileges with respect to a right of way the location and limits of which are in dispute, "the right of way involved should be definitely described in the judgment, at least so that its location, with the aid of such description, could readily be ·located; and the width of the way should be made clear." 28 C.J.S. Easements § 113b., p. 819.[2] But the ease with which these broad general principles may be formulated and stated belies the difficulty frequently inherent in determination of whether a particular description is sufficient.

■■■ Examination of many cases,[3] numerically almost equally divided as to result, indicates that the extent of detail and the degree of precision required in differ-

2. Sunnybrook Groves, Inc. v. Hicks, Fla. App., 113 So.2d 239, 241(3); DeReus v. Peck, 114 Colo. 107, 162 P.2d 404, 406 (4); Leverone v. Weakley, 155 Cal. 395, 101 P. 304, 306; Tichman v. Straffin, 54 R.I. 356, 173 A. 78(2); Stevens v. MacRae, 97 Vt. 76, 122 A. 892, 894(4).

3. Descriptions *sufficient* in these cases: Mueller v. Larison, Mo., 355 S.W.2d 5, 10(9); Meyer v. Everett, Mo.App., 235

S.W.2d 130, 136 (no issue as to existence and location of roadway); Muncy v. Updyke, 119 Va. 636, 89 S.E. 884, 885(3); Conley v. Brewer, 85 W.Va. 725, 102 S.E. 607; Cuillier v. Coffin, 57 Wash.2d 624, 358 P.2d 958, 960(4); Hansen v. Danielson, 136 Cal.App.2d 653, 289 P.2d 50, 52(7); Jacobi v. Mantle, 16 Ill.2d 142, 156 N.E.2d 582, 586–587(4); Powell v. Wines, 179 Ky. 414, 200 S.W. 641, 642(4) ("no dispute as to the limits"); Burch v.

ent situations is influenced by various factors. For example, less detail and precision should be and is demanded in describing and defining the route of a country road or way of access across a farm [e. g., Meyer v. Everett, Mo.App., 235 S.W.2d 130, 136; Muncy v. Updyke, 119 Va. 636, 89 S.E. 884, 885(3); Conley v. Brewer, 85 W.Va. 725, 102 S.E. 607; Jacobi v. Mantle, 16 Ill.2d 142, 156 N.E.2d 582, 586–587(4) ] than in fixing and limiting a driveway easement between city lots. E. g., Mueller v. Larison, supra, 355 S.W.2d loc. cit. 10; Sinnett v. Werelus, 83 Idaho 514, 365 P.2d 952. And the same detail and precision logically should not be, and usually is not, required with respect to the route of a long-established and well-defined road [e. g., Meyer, supra; Muncy, supra; Conley, supra; Hansen v. Danielson, 136 Cal.App.2d 653, 289 P.2d 50; Cuillier v. Coffin, 57 Wash.2d 624, 358 P.2d 958, 960(4) ] as with respect to the route of a road not so established and defined. E. g., Leverone v. Weakley, 155 Cal. 395, 101 P. 304. Thus, it appears that the extent of detail and the degree of precision required in country road cases is that sufficient to enable a person going upon the land to find and identify the way by reference to such description. Meyer, supra, 235 S.W.2d loc. cit. 136; Muncy, supra, 89 S.E. loc. cit. 885(3); Conley, supra, 102 S.E. loc. cit. 608(1).

■ After finding that the *"old log road is the well-defined road running over and across defendants' land and connecting to the highway approach for Highway No. 60,"* the judgment under review provides that the road to be used by plaintiffs "shall be and follow the course of the old log road * * * in the approximate vicinity" of

Blair, 19 Ky.L. 641, 41 S.W. 547, 548 ("very little contrariety as to the exact location"). See also Hall v. Gernhardt, Mo.App., 174 S.W.2d 915; Neilon v. Texas Trust & Security Co., Tex.Civ.App., 147 S.W.2d 321, 326(3), error dismissed. Descriptions *insufficient* in these cases: Isenberg v. Woitchek, 144 Colo. 394, 356 P.2d 904, 907–908; Harrison v. Bouris, 139 Cal.App.2d 170, 293 P.2d

the north-and-south quarter-section line "connecting on the south end to the land of plaintiff[s] and connecting on the north end to the highway approach as now located to U. S. Highway No. 60." Before entering his decree, the trial chancellor properly might have directed a survey [cf. Point Prairie Hunting & Fishing Club v. Schmidt, Mo., 44 S.W.2d 73, 75, 76(2) ] in order that · the decree might have included a precise description of the relatively short segment of the old log road in dispute, i. e., the segment on the north end which is on the east side of the north-and-south quarter-section line. And, although (as already indicated) we are convinced that the case should be affirmed on the merits, we have given serious consideration to the advisability of remanding it with directions for such survey and subsequent reentry of the decree with a precise description of the north segment. Cf. Heard v. O'Dell, 335 Mo. 202, 72 S.W. 2d 491, 497; Hecker v. Bleish, 319 Mo. 149, 3 S.W.2d 1008, 1020–1021.

However, the judgment in its present form is not so wanting in descriptive detail as to be either void or unenforceable. Isenberg v. Woitchek, 144 Colo. 394, 356 S. W.2d 904, 907(1); Alvin v. Johnson, 245 Minn. 322, 71 N.W.2d 667, 668 (footnote 1). The record shows, and all of the interested parties and their counsel must know, that the route of the road runs north on the west side of the north-and-south quarter-section line (and thus within the 30-foot easement strip described in the stipulation and judgment in Case No. 14,851) from plaintiffs' tract to a point some 50 to 60 feet (as plaintiff Chester estimated) or perhaps 75 feet (as defendant O. L. Smith thought) south of the highway right of way,

98, 102, 103(8); Northwest Cities Gas Co. v. Western Fuel Co., Inc., 17 Wash. 2d 482, 135 P.2d 867, 869; Van De Vanter v. Flaherty, 37 Wash. 218, 79 P. 794(4); Sinnett v. Werelus, 83 Idaho 514, 365 P.2d 952, 957(16). See again the Sunnybrook Groves, Inc., DeReus, Leverone and Tichman cases, supra note 2.

where the road veers to the east across the quarter-section line and runs to the highway entrance, the center of which is approximately 36 feet east of the quarter-section line. The road runs across rough, uncultivated pastureland, and less than one-half acre is affected by the disputed segment of the road on the east side of the quarter-section line. There already has been too much of crimination and recrimination, of litigation and relitigation, and of trouble and expense, all of which, as the benign trial chancellor appropriately intimated, might have been avoided "if these neighbors [had] loved each other and wanted to get along." Perhaps it is too much to expect that, at this late hour, the parties yet may recall and heed the Master's teaching that like unto "the first and great commandment" that "Thou shall love the Lord thy God * * *" is the second, "Thou shalt love thy neighbour as thyself." Matthew 22:36–40. Even so, we would terminate (so we trust) this controversy on that note.

The judgment is affirmed.

RUARK, P. J., and HOGAN, J., concur.